By the Court,
Hitchcock, Judge.
There being no question in ■this case, but that Fuller had title to the premises in controversy, and that his .title was conveyed to Griswold, it is clear that the plaintiff must'recover, unless this title is defective by the proceedings in attach.ment.
On the part of the defendants, it is claimed that the proceedings are valid, although irregular, and that they can not now be impeached for •irregularity, for two reasons : 1st. Because it is too late to reverse them in error. 2nd. They can not be impeached collaterally.
It is further claimed that an attachment is a specific lien which ■holds from the time the land is attached, and is to be preferred to any deed, although dated and acknowledged before the service of the attachment, provided the deed is not recorded within the time prescribed by law.
On the part of the plaintiff, it is claimed that the proceedings in attachment are utterly void, because first, no property of the attachment debtor was seized in attachment, and without such seizure of property, the court issuing the writ, could not acquire jurisdiction of the subject matter. 2nd. The court issuing the writ, had no juris-diction to render judgment, until the notice required by law of the pendency of the suit, had been given, and the evidence that such notice had been given should appear of record. If it do not appear of record, the deficiency can not be supplied by parol proof, or proof aliunde the record.
It is further contended, that, even admitting the proceedings in attachment to be of binding force and validity, still the title of the *plaintiff remains good, inasmuch as the deed from Fuller to Griswold, although not recorded within the time limited by law, was in fact recorded before the judgment in the court of Common Pleas, .and the sale to Brown.
The position assumed by the defendant’s counsel, that the proceedings in attachment can not now be reversed for error, nor impeached collaterally, is correct, if the fact be established that the court of Common Pleas in which those proceedings were had, had jurisdiction of the subject matter. This position does not seem to be controverted by the counsel for plaintiff. On the contrary, the first objection by them ■made is that the court had no jurisdiction. And this objection lea'ds *109 to the enquiry' as to what was necessary to give the court jurisdiction. This subject is regulated by statute, and at the present time, in ordinary proceedings, according to the course of the common law, a court, acquires jurisdiction of a particular case, if the matter in controversy be within its jurisdiction, by the service of process upon the peison of the defendant, or that which is equivalent thereto. Although at the time these proceedings were had, if the person of a defendant could not be found, a plaintiff might have an attachment against his-lands, tenements, etc. and upon the return of the sheriff that the lands, tenements, etc. had been attached, he might proceed and recover judgment in the same manner as if personal service of process had been. made. 1 Ch. St. 712.
But the proceedings in the case now under examination, were not according to' the course of the common law. They were under the act of February 14, 1810. “ allowing and regulating writs of attachment.” 1 Ch. St. 672. This act contemplated proceedings against both absconding and absent debtors. In either case they were substantially the same, with the exception of the form of the affidavit, which was in all eases required to be filed previous to the issuing of the attachment. Upon the filing of the affidavit, it was made the duty of the clerk to issue a writ of attachment, directed to the sheriff or coroner, as the case might require, “ commanding him to attach the lands, tenements, goods, chattels, rights, credirs, moneys, and effects of the-, debtor, wherever they might be found.” It was then made the duty of the officer to whom the writ was directed, to seize upon the property of the debtor, and dispose of the same as in the statute provided, and'make return of his doings to the court from which the writ issued.
Now it is clear that if there was no property which could be attached, and the officer should so return, the court would have no-^jurisdiction to proceed further in the case. In the case of Mitchell v. Eyster, 7 O. R. 257, it is said by the court with respect to proceedings in attachment, 11 the facts necessary to attach jurisdiction at the commencement of the suit were, the indebtedness of the defend» • ant, his non-residence, and the actual levy of the attachment upon property owned by him-, or in his hands, subject to the payment of the - debt.sued for.” It will not be sufficient that the attachment is levied upon property belonging to third persons, it must be the property of the defendant. Evans v. Justice, 7 O. 273.
In the case of West v. Fuller, now under consideration, there is no ■ controversy but that Fuller was indebted, and that the proper affidavit *110 wag filed. But the objection is made that the property attached was not the property of Puller, but of Griswold, it having been conveyed to the latter on the 23d of February, 1811, whereas the attachment was not levied'until the 20th of June, 1812. This objection raises the question whether the lands in controversy, under the circumstances of the case, were liable to be attached as the property of Puller.' This is a question of very considerable difficulty, and one with respect to which we have had serious doubts, but have come to the conclusion that they were thus liable.
.There can be no doubt but that as between Puller and Griswold, the title was vested in Griswold ; but how was it with respect to third persons ? The deed conveying the land to Griswold, was executed on the 23d of February, 1811, but it was not recorded until the 1st day •of June, 1813. It was executed without the state of Ohio. The act of the- 12th January, 1805, “ providing for the execution and acknowledgement of deeds,” 1 Ch. St. 484, provides in the 4th section, that deeds executed without the state of Ohio, for the conveyance of lands within the state, shall be recorded in the county where the land lies, within one year after the day of execution, and if executed within the state, within six months after the day of execution, and if not so recorded, “ the same shall be deemed fraudulent against any subsequent bona fide purchaser or purchasers, without knowledge of the existence • of such former deed or conveyance.” This law of 1805, differs from the present law, relative to unrecorded or unregistered deeds in this ■particular : the present law contains a proviso, “ that such deeds may be recorded,” after the expiration of the time prescribed, and “from the date of such record shall be notice to any subsequent purchaser; ” the law of 1805, contained no such provision. 29 O. L. 248.
Under this law of 1805, if a deed was not recorded within time, *and the grantor should convey the same land to another person, the first conveyance, as to the second grantee, would be void, and the legal title would vest in him. If Puller, after the expiration of the year from the date of the deed to Griswold, or even within that time, had conveyed the land in controversy to Brown, the title would have been complete in him, unless it could be proven that he had actual knowledge of the existence from the former deed. Prom this it will be seen, that although as between Puller and Griswold, the title was in ■Griswold, yet as to any other person, not having knowledge of the former deed, Puller could make a good and valid title. The 13th sec•tion of the attachment law of 1810, prescribes, “ that every bargain, *111 sale, assignment, and conveyance, made by the said auditors, or any two of them, by virtue of the authority herein granted, shall be as binding and effectual, as if the same had been made by said defendant, prior to the service of said attachment.” The attachment was served on the 20th of June, 1812. At and prior to that time, as we have already seen, Griswold could have made a conveyance “ binding and effectual,” to vest title, and according to the section above quoted, the eenveyance of the auditors, under the attachment law, must be held to be as “ binding and effectual,” as a conveyance made by him.
From these considerations, we have been led to the conclusion before stated, that the land in controversy was, under the circumstances, liable to be attached as the property of Fuller.
It is further contended by the counsel for the plaintiff, that the court of Common Pleas had not jurisdiction to render judgment in the case, until the notice required by law of the pendency of the suit had been given, and therefore that the judgment is void. This objection raises the question, whether under the law of 1810, a court acquired jurisdiction by the service and return of the writ of attachment, or in consequence of the advertisement of notice, which was an act subsequently to be done. For some purposes it must be manifest that the jurisdiction was acquired before the publication of the advertisement. This"advertisement was, upon the return of the attachment, to be made out by the clerk of the court, and it was the duty of the plaintiff, within thirty days after the return of the writ, to cause the advertisement so made out, to be published in one of the newspapers printed in the state, and nearest to the place where the attachment issued. If the plaintiff failed in having the notice published, it was made the ■duty of the court to dismiss the attachment at his costs.
At the return term of the writ, and of course before the notice could *have been published, it was the duty of the court to appoint auditors to adjust the claims of the attaching creditor, and of .such other creditors as might be presented. And upon the report of these auditors, the court was required to render judgment. For the purpose of appointing auditors, and for other purposes specified in the :act, the court must of necessity have exercised jurisdiction, before the notice could have been given. Under these circumstances, it is a •serious question whether the failure to give notice, and have the proof of it inserted in the record, is mere matter of error, or matter which goes to the jurisdiction. If mere matter of error, it can only be ■reached by writ of error, and can not be set up collaterally to impeach *112 the judgment. In the case of Mitchell v. Eyster, 7 Ohio, 257, it was* held that the facts of the indebtedness of the defendant, -his non-residence, aDd the actual levy of the attachment upon his property, gave jurisdiction. And in the case of Voorhees v. Jackson, 10 Pet. 449, it was decided that the want of evidence of ptiblieation upon the record, was at most but error, and did not vitiate the proceedings.
But in the present case, we are relieved from the necessity of' deciding this question. It is admitted that the notice was actually given, and may be s6 considered, if it be consistent with the principles of law to prove the fact aliunde the record.
It is worthy of remark, that in the law under which these proceedings were had, there is nothing requiring the clerk to record a copy of the advertisement, or to state in the record the fact that the same had been published. Nor is there any thing stated as to the manner in-which the proof of publication should be made. The provision is, that publication shall be made, and unless made, that the suit shall be dismissed at the costs of the plaintiff. A suit not being dismissed, but proceeding to judgment, affords at least a reasonable presumption, that proof of publication must have been made in some way to the court. The practice at this early period, according to my recollection, in all eases where publication in a newspaper was required, was, to introduce the papers themselves, and all the papers containing the publication, to show that the law had been complied with. And it was not-until within a comparatively recent period, that the practice was introduced, of filing a copy of the advertisement, verified by affidavit,, that the same had been published the length of time required by law. In either case, however, it would seem to be proper that a suggestion, of the fact should appear upon the record. At least, such would be our ideas of propriety, at the present day.
Another thing, too, ought to be recollected. At the time these-^proceedings were had, the duties of clerks were pointed out, and the papers specifically stated which were to be copied into the complete record. Hence it would not be strange that he should omit to-record those things, which by law, he was not required to record. The.law in force at the time the judgment in the attachment was rendered,, did not require that, in ordinary eases; the writ should be recorded. And we know that according to the English system of practice, as well as according to the practice of some of our sister states, the-original writ is never considered as a part of the record. The law *113 upon this subject has not been uniform in this statej but like many other of. our laws, has been subject to frequent changes.
" The first law, it is believed, which required clerks, in specific terms, to make records, was the act of February 17, 1808, amendatory to “the several acts >organizing the judicial courts,” 1 Ch. St. 567; although their duty so to do, might be inferred previously, from the law regulating fees, which allowed them a compensation for making records. The 16th section of the act of 1808, provides “ that when any cause shall be finally determined, the clerk of the court shall enter all the pleadings and papers filed as evidence therein, and the judgment thereupon, so as to make a complete record thereof.”
This act continued in force until 1810, when it was repealed by the .act of February 16, of that year, “ to reduce into one the several acts organizing the judicial courts, defining their powers and regulating their practice.” 1 Ch. St. 705. By the 103d section of this latter act it is enacted, “ that whenever any civil cause, of whatever nature it be, shall be finally determined, the clerk of the court shall, during the next vacation, enter the warrants of attorney, original writ or writs, declarations, pleadings, proceedings, and judgments in such cause, so 'as to make a complete record thereof,” etc.
This act was amended by an act passed February 4, 1813. 1 Ch. St. 794, by which this 103d section was explicitly repealed, and the following provision introduced, to wit, “ whenever any suit shall be finally determined, the clerk of the court shall, during the next vacation, enter the indictments, presentments, declarations, pleadings, recognizances, proceedings, and judgment in such cause, so as to make a complete record thereof,” etc. This was the law in force at the time the judgment was rendered in the case under consideration. And it is believed, that from this time until the passage of the act of February 18, 1825, u To organize the judicial courts and regulate their practice,” 2 Ch. St. 1263, there was no law in this state requiring, in terms, a clerk to enter the writ in the complete record.
*If under the law of 1813, it should become necessary in order to sustain a judgment, to prove the issuing and service of the writ( can there be a doubt but that the fact might be proven by the production of the writ and return thereon ; or if the writ could not be produced, then by secondary evidence ? We think not. A party claiming under such judgment, would not be confined to the complete record. All things required to be inserted in that record must be proved by it, but things not required to be inserted, might, from necessity, be proved *114 •aliunde. Upon the same principle in the case before us, the clerk not having been explicitly required to insert the fact of the publication of notice in the record, that fact may be proven by evidence aliunde.
It is further contended by the plaintiff’s counsel, that admitting the proceeding in attachment to be of binding force and validity, still the title of the plaintiff remains good, inasmuch as the deed' from Fuller to Griswold was recorded before the judgment and sale by the auditors.
Upon this point, many authorities have been cited by counsel for both parties. The eases are, however, very few of them like the present, although somewhat analogous. Still the decisions in those cases have not been uniform, and after all we must be governed by a fair construction of our own state legislation. It has already been decided in the present case, that the property might be attached as the property of Fuller, the time having expired within which the deed from him to Griswold should have been recorded. The effect of levying the attachment is declared in the law. “ Such writ when served, shall bind the property and estate of the defendant, so as aforesaid attached, from the time of executing the same.” 1 Ch. St. 674. The attachment then operates as a specific lien upon the property from the time it is attached, and a subsequent conveyance by the attachment debtor of the same property, could not defeat this lien. Neither could the recording of a deed, subsequent to the levy, have this effect, provided that deed was recorded out of time. Although the property is bound by the levy of the attachment, from the time of the levy, the title remains in the debtor, subject to this incumbrance, until sold and conveyed by the auditors. When so sold and conveyed, the law again declares the effect of the conveyance. It “ shall be as binding and effectual as if the same had been made by the said defendant, prior to the service of the said attachment.” If this conveyance had been made by Griswold to Brown, on the 19th of June, 1812, the day before the attachment was levied, there can *be no doubt that it would have vested a title in Brown, which could not have been defeated except by proof that at the time, Brown had knowledge of the execution and existence of the former deed. The same effect results from the execution of the conveyance by the auditors. Such is the literal provision of the statute, and we do not feel ourselves authorized to defeat this provision by construction.
Judgment for defendants.