Hitchcock, J,
The record in this case is voluminous, and many points have been raised by counsel, in argument. These will be considered, so far as is necessary for the disposition of the case.
The errors assigned are based upon the supposed mistake of the Court of Common Pleas, in the instructions given to the jury, in the refusal to instruct as requested by the plaintiff, and in refusing to grant a new trial. The facts of the case are set *233 forth in the bill of exceptions. From this bill it appears, that on the trial of the case the plaintiff proved that a patent for the land in controversy, was issued to Peter Manifold, bearing date February 28, 1809. He further gave in evidence copies of the files, papers, and the decree, &c. in the case of Andrew Reed v. Peter Manifold and others, in the county of Delaware. This suit was instituted on the 3lst day of January, 1817, the object being to compel Manifold, and others claiming under him, to convey the legal title in the land to Reed; Reed claiming that Manifold held the same in trust for him, in consequence of certain facts which were stated and set forth in the bill. This bill, although answered by some of the defendants, was never answered by Manifold, nor was he brought before the Court, except by publication of notice. During the progress of the case, the complainant, Andrew Reed, died, and the suit was revived in favor of his heirs. The defendant, Manifold, also died, and the suit was revived against his heirs, not by name, but as unknown heirs of the said Manifold. On the 3d of October, 1821, a final decree was made in the case, and by this decree the “ unknown 'heirs ” of Peter Manifold were ordered to convey the premises in controversy to David Reed and others named in the decree, and heirs of Andrew Reed, with a further order, that in case said unknown heirs should fail to convey the lands, then the decree to have the same operation and effect as a conveyance. This decree was recorded^ in Fayette county, on the 6th of December, 1821. There does not seem to be any controversy but that this decree, although pronounced in Delaware county, might operate upon lands in Fayette county, as the proof is abundant that in the same Chancery proceedings, it was sought to compel the conveyance of land, as well in Delaware as in Fayette county. It is admitted that whatever of interest there was in the heirs of Andrew Reed, the same is vested in the lessor of the plaintiff.
The defendant then gave in evidence:
1. The original patent from the United States to Peter Manifold, dated February 28, 1809.
*234 2. A deed from Peter Manifold to Adrian Vansinderin, dated June 14, 1809, and recorded in Fayette county, June 6, 1820.
3. A certified copy of a deed from Vansinderin to Matthew Bonner and Cadwallader Wallace, dated January 7, 1831.
4. A deed from Bonner to Wallace.
5. A deed from Wallace to defendant, Smith,, dated December 25, 1833.
These deeds embrace the land in controversy.
The defendant proved that he took possession of the land in 1828 or 1830, under a contract,- and has continued in possession ever since; and further that he and Wallace, under whom he claims, have paid the taxes since the date of the deed from Vansinderin to Wallace.
Such are the general features of the case, and it may not be improper, before examining into the particulars, in which it is claimed that the Court of Common Pleas erred, to inquire, admitting the proceedings, in Chancery to have been regular, in whom was the legal title to this land vested at the time of the commencement of this suit.
Peter Manifold ceased to have any interest in the land, either legal or equitable on the 14th June, 1809, the date of his conveyance to Vansiderin. This deed was not recorded until June, 1820. But the recording of the deed was not necessary to give it effect. The title was as fully vested in the grantee before, as after the deed was recorded. And had Manifold undertaken to convey the land to any other person he would have been guilty of a fraud. Still in a certain contingency, such conveyance would have been held to have vested the title in the second grantee. Not because Manifold had anything to convey, but because Vansinderin, by neglecting to have his deed recorded, had left it in the power of Manifold again to sell and receive pay for the same land. Under such circumstances the law, in accordance with the principles of equity, has provided that he, in consequence of whose negligence the fraud has been committed, shall sustain -the loss occasioned thereby.
*235 The law of 1805, which was in force at the time this deed was executed, requires, if such deeds were executed within the State, that the same should be recorded within six months executed, and if executed out of the State, then the same should be recorded within one year, and “ if not recorded within the respective terms allowed by this act, the same shall be deemed fraudulent against any subsequent bona fide purchaser, or purchasers, without knowledge of the existence of such former deed or conveyance. (Chase’s stat. p. 485.) Now it is well to inquire what was the intention of the General Assembly in the use of this language. Was it any thing more than this, that if a grantee should neglect to have his deed recorded, and in consequence another person should subsequently be induced to purchase the same land, and pay therefor,, such subsequent purchaser should be protected ? As to him, the first deed must be held fraudulent. Such is the language, such the evident intent and meaning of the act. Is the plaintiff in this situation ? Is he a “ subsequent bona fide purchaser,” within the meaning of the law ? It seems to me doubtful. Those under whom he claims, if they have any legal interest in the premises, were purchasers in the technical sense of the term. They, it is true, did not take by descent, and therefore they took by purchase. And if subsequent purchasers, they became such only by the operation of the decree which was pronounced in 1821. So far as any purchase, according to the common acceptation of the term is concerned, that was made long before Manifold had any title to the land. And so far as Vansinderin and those claiming under him are concerned, they were not parties to the Chancery proceedings, and had no opportunity to defend their rights.
But if within the meaning of the act of 1805, those under whom the lessor of the plaintiff claims, were subsequent purchasers, were they purchasers without notice ? There is no proof in the case to show that they had actual notice of the existence of the deed from Manifold to Vansinderin, at the time of the rendition of the decree. That decree was render *236 ed, however, in October, 1821; and the deed had been recorded in June, 1820. It is said, however, that this deed, having been executed under the law of 1805, and not having been'recorded within the time limited by that law, the subsequent recording of it cannot be held to be constructive notice ; and this position seems to be admitted by the counsel for defendant, unless by the construction of a law of 1810, and 1818, such recording can be held to be such notice. It is further claimed, that such has been the decision of this Court, and the cases of Parker v. Miller, (9 Ohio Rep. 108,) and Scribner v. Lockwood, (9 Ohio Rep. 184) are cited.
Now, according to our understanding of these cases, no such principle was decided, nor do we believe that any such principle was intended to be decided. In the case of Parker v. Miller, the defendants claimed title under a sale made by creditors, under the attachment law of 1810. The facts so far as respected the premises then in controversy were these. On the 23d of February, 1811., those premises were the .property of Johnson L. Fuller, and on that day he conveyed them to Apollos Griswold. The deed of conveyance was not recorded until June, 1813, nearly three years after the same was executed. On the 19th June, 1812, Zadoc West prayed out a writ of attachment against Fuller, in virtue of which the lands then in controversy were attached the next succeeding day. Under this attachment such proceedings were had that the land was sold, and a conveyance made to the purchaser on the 3d of September, 1813, and the deed recorded on the same day. This was more than two months after the recording of the deed to Griswold. The Court felt the case to be one of great difficulty, but eventually held that the title acquired under the attachment law must prevail.. Not because the recording of a deed out of time would not be constructive notice from the time the record was made. Nothing of this kind is stated in the case. But the Court was led to the conclusion finally announced, by the peculiar phraseology of the attachment laws, under which the proceedings were had, taken in connection with the deed law of 1805.
*237 As has been already slated, under this latter law, a deed not recorded within the time limited by law, must be postponed, to the deed of a subsequent bona fi'de purchaser out notice. Not because, by the first deed, no title had vested in the first purchaser, but because the General Assembly had provided that his neglect to procure his deed to be recorded, should be construed as a fraud upon tiie subsequent bona fide purchaser. At the time when the proceedings in attachment in the case of West v. Fuller were instituted, Fuller could have made a deed which would have secured to the grantee a title, unless that grantee had actual notice of the prior deed of Griswold, because at that time, although more than a year had transpired after the execution of the latter deed, the same was not recorded.
Under the attachment law of 1810, the property attached was to be sold and conveyed by auditors appointed by the Court, and the 13th section of that law prescribes that “ every bargain, sale, assignment and conveyance, made by the said auditors, or any of them, by virtue of the authority herein granted, shall be as’binding, as if the same had been made by said defendant, prior to the service of said attachment,” (1 Ch. St. 612.) Prior to the service of the writ of attachment, Fuller might have made a conveyance, notwithstanding the pri- or deed to Griswold, because said deed had not been recorded, not because said deed had been recorded out of time, but because it had not been recorded at all. And a deed so executed by him, if the grantee had no notice of the prior deed, would have divested Griswold of his estate in the! land, and would have vested an indefeasible interest in the grantee. As such would have been the effect of a deed executed by Fuller himself, the Court conceived that under the attachment law, the same effect must be given to the auditor’s deed then before them, and so decided. Had the deed of Griswold been recorded before the attachment was issued, we have no doubt the decision would have been different. But as it was, the Court supposed the attaching creditor, by the service of his writ, had *238 acquired a right of which he could not be defeated, by the recording of the deed to Griswold.
case of Scribner v. Lockwood, was controlled by the peculiar phraseology of the judgment and execution law, as was the case of Parker v. Miller by the phraseology of the attachment law. In neither of these cases, did the Court undertake to determine the effect of recording á deed after the expiration of the year, or six.months, upon a subsequent purchaser without actual notice. In fact the act of 1820, the act in force at the time of the execution of the deed before the Court in the case of Scribner v. Lockwood, expressly provided that although a deed might not be recorded within the time limited by the act, still it might be recorded afterwards, and from the date of the record should “ be notice to any subsequent purchaser or-purchasers.” (Ch. St. 1139.)
The law of 1805 contains no express provision like the foregoing, nor does it contain any provision that a deed shall be recorded at all, unless it was done within the time limited. But we suppose that the county recorder, under the “ act providing for recording of deeds,” &c., of April 13, 1803, (Chase’s Statutes, 376) was bound to record all deeds properly executed, which might be handed to him for that purpose, regardless of the time when the same were executed. This act was not repealed until 1810. Now we incline to the opinion, that under the law of 1805, when a deed was recorded although not within time, still from the time of its being recorded, it must be held to be notice to subsequent purchasers. The great object of the registry laws is to give notice to subsequent purchasers, and by holding that the recording of a deed out of time would not operate as notice, we should, in a great measure, defeat the end and purposes of those laws. But before the deed to Vansinderin had been recorded, the laws of 1818 and 1820 had been passed ; and under these laws we can have no doubt, that the recording of a deed out of time, was notice. The deed to Vansinderin was recorded on the 6th June, 1820, and by this recording, notice was given to subsequent purchasers.
*239 Rut it is claimed by the plaintiff’s' counsel that the defendant could not obtain any advantage by procuring his deed thus to be recorded, because, at the time it was done, the suit Reed’s Heirs v. The Unknown Heirs of Peter Manifold was depending, and that the rights of all must be determined, as they existed at the time of the commencement of the suit. This doctrine of Us pendens, is ■ well understood.. It is one which sometimes conduces to justice, at others it operates very inequitably. There are cases, however, in which it is not applicable. In the case of Gibler et al. v. Trimble, 14 Ohio. Rep. 323 ; this Court held that those who were interested in the subject matter of cohtroversy, at the time of the commencement of suit in chancery, but were not made parties to the proceeding, were not affected by this doctrine of Us pendens. So in the case of Hopkins v. McLaren, the Supreme Court of error in New York, held “that this doctrine applies only where a third person attempts to intrude into a controversy, by acquiring an interest in the matter in litigation pending the suit; ” 4 Cowen R. 667. At page 679, it is said “any interest acquired, in a subject matter of a suit, pending a suit, is so far considered a nullity, that it cannot avail against a plaintiff’s title. The reason of the rule is, that if a transfer of interest, pending a suit, were to be allowed to affect the proceedings, there would be no end to litigation; for as soon as a new party was brought in, he might transfer to another, and render it necessary to bring that other before the Court; so that a suit might be interminable. But this reason has no application to a third person whose interest subsisted- before the suit was commenced, and who might have been made an original party.”
It seems to me that' these decisions are based upon sound reason. It is a well known principle in equity proceedings, that all persons interested shall be made parties, and further, that a decree rendered in a case shall have no effect except upon parties and privies. If a complainant shall fail to make one who is interested a party, and such individual shall proceed to strengthen his interest, it certainly cannot consist with pro *240 priety that the complainant shall complain of this act. He is first in fault. Had he complied with the well known rules of proceeding, the one of whose acts he now complains would have been before the Court, and the rights of all' would have been determined as they existed at the time of the commencement of the suit.
The present case is one well calculated to illustrate the correctness of the principle as settled in this State and in New York, in the cases before cited. In 1809, Vansinderin purchased of Peter Manifold the lands in controversy, and received a deed for the same. He became the rightful owner of the land in fee simple. Nothing in the nature of a title, either legal or equitable, remained in Manifold. But in 1817, Andrew Reed filed a bill in Chancery for the purpose of acquiring the legal title to this land, against Manifold and others, but did not make the individual, in whom that legal title was vested, a party to the suit. During the pendency of that suit, Vansinderin, by causing his deed to be recorded, gives notice to the complainant and to the world, that he has a deep interest in the property in controversy. Still the complainant .did not make him a party, but proceeded and took a decree against those who had no interest in the property, and now claims that the only one interested, shall loose that property because he did not give that notice before the suit was commenced. It seems to the Court that this is hardly consistent with the principles of abstract equity and justice. In truth, Vansinderin not having been made a party to those proceedings, was in no way affected by the decree.
Upon full and careful consideration, we are of opinion that upon the facts disclosed in the bill of exceptions, the title to the land in controversy is vested in the defendant. Did the Court below commit any error in the charge to the jury?
The first instruction requested was, “ that said Chancery proceedings and decree were sufficient to vest in the heirs of Andrew Reed, named in said proceedings, all the title of said *241 Peter Manifold, deceased, and of his heirs, in the lands described in the declaration.”
This the Court refused to give, but charged the contrary. In the view which we take of the case, having all the facts disclosed in the bill of exceptions, it seems to us that the instructions here requested would have no influence upon the case whether given or withheld. Even if the heirs of Reed had all the title which Manifold possessed at the commencement of the suit in Chancery, they had nothing, for at that time Manifold had nothing. He had'previously parted with all his interest.
The second instruction was, “that the deed from Peter Manifold to Adrian Vansinderin, and its recordation on the 6th day of June, 1820, did not affect the rights of the said heirs of Andrew Reed, arising from said decree, unless at the time of the rendition of said decree, they had actual knowledge of the existence of said deed.” ^
We think the Court did not err in refusing this instruction. As before remarked, by the deed from Manifold to Vansinderin of 1809, the legal title to the premises was vested in the latter, and he had the right to procure that deed to be recorded, and when recorded, the record would operate as constructive notice, not only to the heirs of Reed, but to all the world.
The third instruction required and refused was:
“ That the said deed not having been recorded within one year from the day on which the same was executed, its subsequent recordation did not render it from that time constructive notice to said heirs, and that actual notice to them before the rendition of said decree was necessary to give it any efficacy as to them and those claiming under them.”
This is disposed of by the remarks upon the last previous instruction. The Court did not err in refusing it.
The next instruction requested is:
“ That the title of said heirs derived from said decree, relates back, as shown by the proceedings in said chancery case, to a period earlier than the time of the recording of said deed, and *242 that the recording of the deed after the time to which the said title so relates, could not in any wise affect the title derived to said heirs from said decree.”
Admitting that the title of the heirs of Reed, derived from said decree, if they have acquired any, would have related back to a time earlier than the recording of the deed, of which there may be great doubt, the great difficulty is, they acquired no title. The only person in whom the title was vested was not a party to their suit — hence by proceedings against others his rights are not affected.
The next instruction requested was:
“ That the notice given to the unknown heirs of Peter Manifold in said Chancery case, as this fact appears by the decree, files and proofs in said case, was sufficient to give the Court rendering said decree jurisdiction as to said heirs, and that the decree so rendered was valid and effectual, as respects the said Peter Manifold and his heirs, and that the said decree so rendered cannot be collaterally impeached or questioned in this suit.”
This is rather in the nature of an abstract proposition, and one upon which it was not necessary for the Court of Common Pleas to pass, nor is it one which we are disposed to determine until it becomes necessary. At the time these proceedings were had, there was no statute in the State authorizing such proceedings against unknown heirs. If such a practice was universally adopted, it would be a strong reason why it should be sustained, although it might not be a conclusive one. Whether such practice did or did not prevail, we are not informed, except from the arguments in this case. It is certainly a practice which has done no particular injury in this case, whatever it may have done in others. The principle that a decree rendered in a case where the Court has jurisdiction, cannot be collaterally impeached, is recognized.. But we also recognize another principle, that none but parties or privies are affected by a decree.
*243 So far as the publication of notice is concerned, the fact being found in the decree that such publication was made, it cannot now be controverted. '
The counsel for plaintiff further requested the Court to instruct the jury:
“ That the deed from said Peter Manifold, executed on the 14th day of June, 1809, not having been recorded until the 6th day of June, 1820, cannot, without proof of actual notice to the said heirs or their ancestor, prevail against the equity of the said Andrew Reed, which commenced prior to the execution of said deed, and was consummated into a legal title by said decree.”
This was refused, and we think rightfully. The deed from Manifold to Vansinderin, must prevail against any prior equity of the plaintiff or those under whom he claims, unless proof is adduced to show, that this prior equity was known to Vansinderin, when that deed was executed. The equities, if those under whom the plaintiffs claim had any equity, are equal, and we suppose in such case, he who has the legal title coupled with his equity, must prevail. For reasons already stated, the assumption that Reed’s equity by the decree was consummated into a legal title, is not well founded. At the time that decree was rendered, the legal title was in another person, not a party to the suit. And this legal title was not acquired by that person during the pendency of the suit, but previous to its commencement. All that was done with respect to it during the pendency of the suit, was to give notice to the world of its existence.
In the opinion of this Court, the Court of Common Pleas did not err in any or all the rulings complained of, and the judgment of that Court is affirmed.