## HOPPING *v.* BURNAM.

It is not error, to preclude an answer to irrelevant or immaterial evidence.

When actual notice is required by statute, evidence of constructive or implied notice is not sufficient.

Actual notice can only be communicated by express information to, or personal service upon the party interested.

A defective description of land in a levy is cured by a correct description in the sheriff's deed, when it shows that the land conveyed is the same on which the levy had been made.

A mere omission or irregularity in a sheriff's return, cannot vitiate a sale made under execution, so as to invalidate the right of a *bona fide* purchaser.

Sheriffs' returns of levy &c., not essential to title.

Under the Michigan statute of 1827 in relation to conveyances, an unrecorded deed cannot prevail against a subsequent purchaser, who had his deed recorded first.

Under the registry law of 1840, no conveyance is valid except between the parties thereto and such as have had actual notice thereof, until it is deposited for record.

Deeds executed before the registry act of 1840, should be recorded under it, the same as deeds executed subsequent to the passage of the law.

A judgment lien will hold against a prior unrecorded deed, without actual notice.

A deed for land first filed for record, though subsequently dated will prevail.

*Error to Des Moines District Court.*

*Opinion by* GREENE, J.   An action of right, commenced January 16, 1846, by Joseph S. Burnam against Buckley

Hopping v. Burnam.

C. Hopping. The suit was instituted and pleadings filed under statutory provisions. The cause was finally submitted to a jury, at the April term of the district court in 1849, and a verdict returned that the plaintiff had right to the immediate possession of the premises described in the writ and declaration. A judgment was rendered accordingly.

It appears of record, that the plaintiff below claimed title under a sheriff's deed, derived from a judgment rendered June 4, 1841, in favor of Daniel Crenshaw against Jeremiah Smith. Execution issued upon this judgment December 9, 1841. The land in question was levied upon, and on the 20th of January, 1842, it was sold to the plaintiff. The deed was executed on the 23d of January, and filed for record on the 9th of March, 1842. It appears that Smith the defendant in execution, had purchased the land from the United States on the 16th of January, 1840.

Hopping, the defendant, claimed title to the land by virtue of a deed from said Smith, dated February 6, 1840; but the deed was not filed for record until March 14, 1842. The defendant also proved that he had been in actual possession of the premises, from the summer of 1839 until the spring of 1846.

It will be observed that both parties claim the premises in question, under Jeremiah Smith, by whom the land was entered; the plaintiff by judicial, and the defendant by voluntary sale. The principal question then to be determined is, which of the conveyances under the foregoing facts is entitled to legal priority? But as other questions were raised on the trial below, we will proceed to consider them in the order in which they are assigned as error.

1. Questions were propounded to a witness by the defendant, in relation to the time he had been in possession, and in relation to the sheriff's knowledge of his interest in the land. These questions being objected to, the witness was not permitted to answer them; and the court decided that the mere possession of the premises by the defendant, or his acts of ownership over them, were not sufficient to

prove actual notice to the plaintiff of the defendant's purchase and deed from Smith. Where irrelevant or immaterial evidence would be elicited by a question, it will hardly be contended that the court erred in precluding an answer, and hence the objection to those questions was very properly entertained. If constructive notice of the defendant's deed from Smith, could have been deemed sufficient under our statute, no doubt, evidence of possession would have been admissible; for possession in such a case and acts of ownership would be considered sufficient notice to put the purchaser upon inquiry. But the proof required under the statute was of *actual* notice. Constructive or implied notice may be shown by a record authorised by law, by possession, by acts of ownership, and by other appropriate circumstances, which may impart notoriety of interest in the estate; but actual notice can only be communicated by express information to, or personal service upon the party interested in the notice. There is no ambiguity in the language of the act. The law makers were not satisfied with the term "notice" without qualification, which would render proof of notice by construction or implication admissible; but they have in their wisdom left no opening for such proof; as they have in express terms required a different and more direct kind of notice. Laws of 1840, p. 39, §31. The question proposed relative to the sheriff's knowledge of the defendant's interest in the land was also irrelevant. Even if established that the sheriff had notice of the deed from Smith to Hopping, it could not therefrom be deduced as a legal or logical inference, that Burnam had actual notice of such deed. In *Stahle* v. *Spohn,* 8 Serg. & R. 317, it was decided that notice to the sheriff at a sale of real property is not notice to the purchaser, and so in *Stanley* v. *Perley,* 5 Greenl. 369. The propriety of these decisions has not been questioned. Under this view then and under the conviction that evidence of possession is alike insufficient and inapplicable to establish *actual* notice as required by statute, we can see nothing erroneous in this ruling of the court.

2. It is objected that the execution returns, and sheriff's deed were improperly admitted in evidence, and in support of this objection it is urged that the levy and return of the sheriff are defective and the land insufficiently described. The returns in this case were no doubt incomplete, and the description of the premises levied upon vague and uncertain. It sets forth the land as "a part of the west half of the south west quarter of section six, in township sixty nine, range two west, in Des Moines county I. T." The question arises, on what part of the eighty acres described, was the levy made? Such vagueness of description would have been adjudged void for uncertainty, on a motion made at the proper time to set aside the levy and return; and if the deed made under the execution had contained the same defective indefinite description, it could have conferred no title upon the purchaser. But the deed describes the land levied upon and sold, with reliable certainty, and thereby cures the defective return endorsed upon the execution. After commencing the premises in the ordinary form, the deed proceeds in these words: "I, the said James Cameron, sheriff as aforesaid, levied upon the following described tract of land, to-wit: a part of the west half of the south west quarter of section six, in township sixty-nine, north of range two west, in Des Moines county, commencing at the section post at the south-west corner of said quarter section, running thence north with the township line thirteen chains and forty-two links, thence east thirteen chains and forty-two links, thence south thirteen chains and forty-two links to the section line dividing sections six and seven in said township, and thence west with said section line thirteen chains and forty-two links to the place of beginning; containing eighteen acres," &c. The certainty with which the premises are described in the deed, and the averment that they were levied upon under the appropriate execution, show that the property sold was sufficiently identified at the sheriff's sale. But it was otherwise in *Throckmorton* v. *Moon*, 10 Ohio 42, which is cited in support of the objection at bar.

In that case the levy not only described the premises in general and vague terms, but the sheriff's deed contained equally indefinite and unreliable description. It described the land conveyed as 1055 acres in a tract of 1731 acres, located in the name of R. T. Neither the sheriff's return, nor the deed designate what particular portion of the 1731 acres were levied upon and sold. It being impossible to ascertain either from the levy or deed what portion of the entire tract so vaguely described, had been conveyed, the deed was very properly declared void for uncertainty. The other cases cited by counsel upon this point, we consider equally inapplicable to the present inquiry.

It has already been determined by this court, that an omission or inequality in a sheriff's return, cannot vitiate a sale made under execution so as to invalidate the right of a *bona fide* purchaser. *Humphreys* v. *Berson*, 1 G. Greene, 199, 215. In that case this court adopts the doctrine in *Doe* v. *Heath*, 7 Blackf. 156, in which the returns of the sheriff did not show who was the purchaser at the sale. The court in their opinion say, that if the party "relied upon the execution and return for proof that he was the purchaser of the land, and that were all the proof in the case to sustain his title, it would be insufficient. The sheriff's returns would not be sufficient to satisfy the statute of frauds. But a deed was made by the sheriff to Whitcomb as the purchaser of the land, and that is sufficient. A purchaser at sheriff's sale, who pays his money and receives a deed from the sheriff for the land levied on and sold, cannot be prejudiced if the sheriff make an imperfect return or if he make no return at all." Guided by this rule which we regard as salutary and just, it will be conceded that the objection urged in this case is completely removed. True, the return is defective; it omits a full description of the property levied upon and sold; but a deed is introduced in authentic form, which with ample detail fills the hiatus occasioned by the imperfect return, stamps with clearness the proceedings

of the officer, and establishes the right of the purchaser. Besides it is a settled rule that the returns are not an essential part of the title in a sheriff's sale. If defectively made or not made at all, that fact will not impair a purchase which would be otherwise valid. So well established is this principle, so uniformly recognized by the most profound jurists, that a review of it at this day, might be regarded as supererogatory. The supreme court of the United States, in the case of *Wheaton* v. *Sexton*, 4 Wheat. 503, say that "the purchaser depends on the judgment, the levy and the deed. All other questions are between the parties to the judgment and the marshal. Whether the marshal sells before or after the return, whether he makes a correct return or any return at all to the writ, is immaterial to the purchaser." No court has presumed to question the correctness of this decision. The highest tribunals have been guided by it in acting upon all sales. made by judicial process. In this case the judgment and deed are conceded to be good, but it is claimed that the levy was defective, and therefore the purchaser acquired no title. We can see no serious defect in the levy. It cannot properly be considered defective, from the fact that imperfect returns were made. A levy precedes the returns and is independent of them. It consequently may have been good and upon specific property, even if incompletely, or in no way described by the returns. And independent of the presumption that an officer has done his duty until the contrary is shown, we learn from the deed, as before stated, that a levy was correctly made. When the purchaser at a sheriff's sale shows an authorised execution and deed, a correct levy will be presumed. It was held in *McEntire* v. *Durham*, 7 Iredell 151, that a judgment, execution and deed from the sheriff are sufficient to support the title of a purchaser, without proof of a levy. And in *Evans* v. *Davis*, 3 B. Monroe 344, it was held that if property is sold under execution, and there is no return that it was levied on, the law presumes a levy. Under these decisions the objections urged to the levy,

and to the admission of the execution and deed as evidence in the case, must be regarded as groundless. Even if it appeared that the levy was as defectively made as is contended, that could by no means justify the exclusion of the execution and deed. They were admissible in evidence, because essential links in a chain of evidence to establish title. If not sufficient, they were at least conducive proof, relevant to the issue, and therefore admissible.

3. The next error assigned controverts the propriety of certain instructions which were given as · asked by the plaintiff. The only points involved in these instructions about which there can be the slightest doubt, are those designated in the record as third and fifth. By the third it appears that the court charged the jury that the deed offered in evidence by the defendant, does not show a valid title in him as against the plaintiff, unless it is proven to the jury that the plaintiff had actual notice of the existence of said deed. As applicable to this instruction we have already considered what constitutes actual notice, and as the other principles involved in this instruction are intimately connected with the fifth, we will state and examine them in connection. In the fifth instruction, the court charged "that the conveyance from Smith to Hopping before the service was recorded, only had the effect to pass the title of Smith to Hopping as between themselves and such other persons as had actual notice of said conveyance, and that such deed could not affect the rights of a subsequent purchaser at a sheriff's sale on an execution against Smith, without actual notice."

It will be seen by the facts which we have stated, that at the time judgment was rendered against Smith, Hopping was in possession of the land in question, and had previously obtained a deed for it from Smith, but had neglected to file his deed for record. It is urged, as worthy of consideration, that as Smith had conveyed the land to another, and as a consequence had no interest or ownership in it at the time judgment was rendered against him, such judgment could not operate as a lien upon the land.

No one could think of controverting this position, if such grantee had acquired complete and absolute title to the premises. A conveyance is not complete, a title not absolute, until all the leading requirements of the law regulating conveyances have been substantially complied with. If there had been no registry law in force at the time the deed was given to Hopping, nor when the judgment was rendered against Smith, then the unrecorded deed executed and delivered in good faith anterior to the judgment, would have been evidence of title in Hopping even against the creditors of Smith. Had this been the case, the position assumed by counsel for him as plaintiff in error, could not be overcome. But unfortunately for his title, there was a registry act in force, not only when the deed was given, but also at the date of the judgment. At the date of the deed, February 6, 1840, a statute of Michigan, entitled "an act concerning deeds and conveyances, approved April 12, 1827," was in force. Michigan Laws of 1833, p. 280; also republished in appendix to Wisconsin Laws of 1836, p. 42. The first section of this act, in defining what shall constitute a good and valid deed to pass land, provides that it shall be signed and sealed by the parties granting the same, signed by two or more witnesses, acknowledged or proved, and recorded as in the act provided. The second section after specifying the manner in which deeds shall be acknowledged or proved, requires that "such deed or conveyance shall be recorded in the office of register of probate for the county, or register for the city where such lands, tenements, or hereditiments respectively are situated, lying and being; and every such deed or conveyance that shall, at any time after the publication thereof, be made and executed, and which shall not be acknowledged, proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee, for valuable consideration, unless such deed or conveyance be recorded as aforesaid, before the recording of the deed or conveyance under which such subsequent purchaser or mortgagee may claim."

The stringent and imperative character of this statute needs no comment. It extends no relief, contains no saving clause in favor of an unrecorded deed, when brought in conflict with the rights of a subsequent purchaser, who has complied with the beneficial requirements of the registry law. Such unrecorded deed is to be unconditionally adjudged void against such subsequent purchaser, and can not be aided by showing even actual notice. It must be obvious then, that Hopping acquired no right by his imperfect conveyance, against subsequent purchasers under the law of Michigan. This law continued operative until the first day of June 1840, when an act of the Iowa legislature took effect. This was entitled "an act to regulate conveyances," and was approved January 4, 1840. It does not in express terms, repeal the Michigan law of 1827, but it displaces that law by its new regulations and provisions in relation to the same subjects. That is, the old law was suspended by the existence and effect of the new; but if any portion of it continued operative it was soon after repealed by a general repealing statute. Laws of Extra Session of 1840, p. 20, §1. The question may here be presented, did Hopping by virtue of his unrecorded deed acquire any additional right under this change in the law? The twenty-ninth section of the new act (Laws of 1840, p. 39,) requires every instrument in writing conveying or in any way effecting real estate, when proved or acknowledged, and certified as required by the statute, to be recorded in the office of the recorder of the county in which such real estate is situated. The next section provides that from the time of filing such instrument for record, it shall be notice to all persons; and section thirty-one declares that, "no such instrument in writing shall be valid except between the parties thereto, and such as have *actual* notice thereof, until the same shall be deposited with the recorder for record." As Hopping neglected to comply with the regulations of this law until after the judgment was rendered against Smith, and after Burnam's title was in all respects perfected by having his deed from the sher-

iff duly filed for record, we can deduce no other conclusion from the premises, than that Hopping's deed from Smith is invalid as to Burnam, and can in no way impeach his title. It is true that this deed possesses ample validity between the immediate parties to it, without a compliance with these recording acts. These laws were not intended to affect the immediate parties to conveyances, but they were designed as a protection and shield to third persons, as an effectual barrier against fraud and imposition upon the rights of creditors, and innocent subsequent purchasers. And as such laws are found to be vastly conducive to this noble object, they are regarded with peculiar favor by courts of justice. They cannot be considered as oppressive or onerous. Their regulations are easily understood, they may be readily followed, and afford ample protection to all parties concerned. Men buying real estate in good faith and for a valuable consideration, generally have the precaution to comply with the regulations of a law, so beneficial in its effects and so essential in securing title. If this prudential regulation is neglected, the delinquent purchaser has no one to blame but himself. The presumption of fraud is created against the validity of his purchase by his own laches and he must abide the legal consequences.

Had the purchase been made and the deed delivered prior to the judgment against Smith, Hopping would have been secure by filing his deed for record previous to the rendition of the judgment. But as this essential attribute to title was omitted, Smith's right to the land so far as it concerned his creditors or subsequent purchasers was not alienated, but still remained in him for their benefit, as absolutely as if no transfer had been made, and hence his right was the proper subject of the lien created by the judgment. See act to prevent frauds, approved January 16, 1840, *Rev. Stat.* 271, §4.

Another position assumed by counsel with apparent confidence is, that the instructions of the court below were erroneous, because, as they allege, the deed to Hopping

Hopping *v.* Burnam.

was not subject to any recording act. In support of this point, it is contended that as the Iowa recording act of 1840 took effect after the deed was given, and as no law should have a retrospective operation it should not affect Hopping's previously acquired title. We fully agree with counsel that a statute cannot operate retrospectively so as to impair rights previously acquired. But we are unable to see the particular application of this principle to the present inquiry. In sustaining the action of the court below, no retrospective construction of the statute is necessary, nor are vested rights in any way disturbed. We have already shown that Hopping acquired no right against the creditors of Smith nor against subsequent purchasers, previous to the law in question, and consequently he had no right which could be impaired by its provisions; neither did he acquire any right under this law because he did not avail himself of its regulations. He was by no means exempt from its recording requirements merely because his deed was executed before the law took effect. Its provisions were not limited to deeds subsequently executed, but they extended equally to deeds then *in esse,* to those previously executed and acknowledged but not recorded. And still the law did not retroact, it did not require deeds to have been recorded before it took effect, but it assumed a regulation over them from and after that event. It operated in the same way upon prior deeds, as did the sixth section of the act to prevent frauds operate upon judgments previously rendered, and must be governed by the same rule of construction recognized by this court in *Woods* v. *Mains,* 1 G. Greene 275. We can discover nothing in *Norris* v. *Slaughter,* 1 G. Greene 338, which militates even remotely against our conclusion upon this point.

Hoppings common law rights under the deed are adverted to, but as the deed has never been without statutory control, never for a moment released from the requirements of a recording act, it is useless for us to consider what rights he might have acquired under a law which has had no bearing upon the case.

Thus viewing the principal objections urged to the instructions of the court below, and the uncontroverted principles of law applicable to those instructions, we are led to the conclusion that they were properly given.

From the foregoing remarks it will be understood that this court still adheres to the principle decided in *Brown* v. *Tuthill*, 1 G. Greene 189, that a judgment lien will hold against a prior unrecorded deed, without actual notice. We have carefully examined the arguments and authorities brought to bear adversely upon this decision, and we are unable to see any substantial reason for doubting its propriety and correctness. Indeed, we cannot see a reasonable or plausible ground for any other conclusion, unless legislative enactments upon the subject, and the right of parties under existing laws, should be entirely disregarded. In no other way can the intention and spirit of those statutes be maintained. Clearly common law decisions or those made upon statutes materially different, can not be applicable to the laws of Iowa. We believe in every state where laws like ours are in force, like decisions have been made.

In *Parker* v. *Miller*, 9 Ohio 108, the title acquired by the purchaser under the attachment law of that state, was adjudged preferable to the title of an alienee of the judgment debtor by deed executed before, but not recorded till after the lien was created by the service of the writ. As the deed in this case was not recorded as required by the law of that state, it was determined that the rights of the first grantee not having been legally perfected, should yield to those of the second.

In Pennsylvania it has been held that a purchaser of lands at a sheriff's sale, is protected from all instruments not recorded and of which he had no notice. *Irvine* v. *Campbell*, 6 Binn. 118.

In Virginia it has been decided that when a deed of land is made by a debtor, before judgment is recovered against him, but not recorded until afterwards, the judgment is a lien on the land. *McClure* v. *Thistle*, 2 Gratt. 182.

And so in Missouri, a judgment lien will hold against a prior unrecorded deed, *Reed* v. *Austin*, 9 Mis. 722. A like decision was previously made by the same court in the case of *Waldo* v. *Russell*, 5 Mis. 387; also in *Hill* v. *Paul*, 8 *ib.* 479. In the case last cited, a mortgage was given about one month before judgment was rendered against the mortgagee, but was not filed for record till over two months after. The sale under the judgment and the recording of the sheriff's deed took place at a still later period, and the purchaser was duly notified at the sale that there was a mortgage on the land, and still it was held that the judgment lien and sale under it were good against the mortgage. These cases are decided upon statutory regulations, which are in all particulars analagous to those of Iowa.

The same doctrine also obtains in Kentucky under a statute which declares such deeds void as to creditors and purchasers without notice. *Graham* v. *Samuels*, 1 Dana 166; *Helm* v. *Logan*, 4 Bibb 78.

We find in Massachusetts the same principle recognized. It was held in *Coffin* v. *Ray*, 1 Met. 212, that the creditors of a second grantee, who had proceeded by attachment against his land, would hold against the second grantee without actual notice of his prior unregistered deed, personally given before the attachment levy.

The same may be said of Illinois, *Martin* v. *Dryden*, 1 Gilman 187. So in North Carolina, *Davidson* v. *Cowen*, 1 B. and Dev. Eq. Cas. 470.

In Tennessee, a deed not duly registered is void as to the creditors of the grantee, either with or without notice. *Washington* v. *Tronsdale*, Mart. and Yerg. 385.

We find in other states decisions to the same effect. But in New York a prior unrecorded mortgage was preferred to a subsequent judgment. *Jackson* v. *Dubois*, 4 John 216. And this doctrine is mainly sustained by subsequent decisions. *Jackson* v. *Terry*, 13 John 471; *Jackson* v. *Town*, 4 Cowen, 606; *Jackson* v. *Post*, 9 *ib.* 120. In the first of these New York cases it is conceded

by the opinion of the court, that if the purchaser had perfected his title under the judgment before the registry of the mortgage, he must have recovered. In *Jackson* v. *Terry*, the subsequent purchaser from the judgment debtor, prevailed against the judgment purchaser, because his deed from the sheriff had not been recorded. The case of *Jackson* v. *Town*, turned chiefly upon the want of title in the judgment debtor. And in *Jackson* v. *Post*, the purchaser under the judgment, appears to have had notice of the prior deed. These decisions are explained and qualified in *Jackson* v. *Chamberlain*, 8 Wendell 621, and in *Jackson* v. *Post*, 15 *ib.* 588. The registry act of New York under which these decisions were made, is like the English statutes and applies to a subsequent *bona fide* purchaser, without notice. This, it is considered does not extend to a judgment creditor. But the statute of Iowa in force at the time judgment was rendered against Smith, is much more comprehensive. In unrestrained language, it declares that no unregistered deed shall be valid except between the parties, and such as have actual notice. This as clearly comprises creditors without notice, as it does purchasers. Beyond the two exceptions, it is unqualified in its extent and application. Giving to our statute then, the construction and effect evidently intended by the legislature, and directed by the enlightened adjudications of other courts upon similar statutes, we are united and clear in the opinion, that the judgment against Smith having been rendered without actual notice upon his creditor, became an effectual lien upon the land in question, and that it can in no way be impaired by the unregistered deed to Hopping.

A judgment lien, it is true, does not of itself establish a right to the land on which it attaches, but it does confer a priority interest, a right to levy on the same to the exclusion of subsequent and adverse claims, and when the lien is enforced by judicial sale, the title of the creditor and of those claiming under him, relates back to the date of the judgment and prevails to the exclusion of all inter-

mediate incumbrances. *Rankin* v. *Scott*, 12 Wheat. 177; *Conard* v. *Atlantic In. Co.*, 1 Peters 442; *Massingell* v. *Downs*, 7 Howard U. S. 767.

Under this view of a judgment lien, it will be observed that Burnam's title acquired under the judgment by virtue of the levy and sheriff's deed, must commence from the date of the judgment, and from that time be preferred to all subsequently acquired or registered rights. If then Burnam's title rested upon the priority of the judgment lien alone, without reference to the fact that his deed was first recorded, it would prevail over Hopping's unregistered deed. Burnam's priority of title appears to be based upon a double security. The preference to his title is not only secured by the judgment lien but also by his prior recorded deed, which was filed for record five days before Hopping's. That the deed for land, first filed for record though subsequently dated, will have the preference can not be controverted. Upon this point see in addition to the authorities cited, *Thompson* v. *Bullock*, 1 Bay 364; *Curtis* v. *Deering*, 3 Fair. 499; *Trull* v. *Bigelow*, 16 Mass. 406; *Whittemore* v. *Bean*, 6 N. Ham. 47; *Lightner* v. *Money*, 10 Watts 407; *Jackson* v. *Walsh*, 14 John 407.

In thus deciding this case, we have carefully examined the authorities adduced and the arguments adroitly applied by counsel for the plaintiff in error, and still we are unable to arrive at any other conclusion. The case of *Jackson* v. *Chamberlain*, 15 Wend. 620, upon which particular reliance appears to have been placed, is not we think departed from by our views in this case. The facts in the two cases are by no means analagous. In that case the unrecorded deed was executed in 1793, at which time there was no law in force requiring a deed to be recorded, in order to give it validity, consequently the conveyance to the grantee was perfect on the delivery of the deed. As there was no want of validity in the transfer, the grantor's right to the property was completely divested, and of course a subsequent judgment against him could not create a lien upon the property. The opinion of the

court shows conclusively that if there had been a registry act in force, as in the case at bar, a different decision would have been made. On page 625, the court say in relation to the grantor of the land, that "even if the title had passed from him in a manner conclusive against him as in favor of his grantee, as by an unrecorded deed where the statutes require a record to conclude subsequent incumbrancers on *bona fide* purchasers, still if such record be necessary as against such purchasers and incumbrancers an unrecorded deed is unavailing against them; so in this case, had it been necessary by statute in 1793, that every deed should be recorded to give it effect against subsequent *bona fide* purchasers or incumbrancers, then, there would have remained an interest in Edwards (the grantor,) upon which the judgment would have been a lien, and though our statute does not save the rights of judgment creditors, and the judgment alone is unavailing as an incumbrance against an unrecorded deed, yet when that judgment is enforced and a sale is made upon execution, and the sheriff's deed is first recorded, the purchaser becomes a *bona fide* purchaser, and in that character is entitled to the property in preference to the grantee of the unrecorded deed." Apply these views of the law, predicated upon the limited and peculiar statute of New York, and still they fully sustain the general conclusion to which we have arrived in this case. But as the statute of that state does not justify the same efficiency and force to judgment liens, the decisions of their courts upon those points cannot be applicable to Iowa. So far as they are applicable, we are disposed to regard them as reliable authority; and from which we think there has been no departure in adjudicating the questions involved in this case. (1)

Judgment affirmed.

*M. D. Browning* and *J. C. Hall*, for plaintiff in error.

*Henry W. Starr*, for defendant.

(1) A petition presented for a rehearing of this case was overruled.