Johnson, J.
This was an action of slander. The Common'Pleas sustained a demurrer to the petition, and dismissed the petition on the ground that the words charged were not actionable. TheDistrict Court affirmed that judgment.
The words alleged to have been spoken charged the plaintiff, a young man, with what is .known in the text-books as the crime against nature.
This act is not made an indictable offense by the laws of Ohio.
The question therefore is: Are words charging an act involving a high degree of moral turpitude, but not indictable, actionable in themselves, without alleging special damage ?
For many years, both in England and in this country, what constituted actionable words was very uncertain.
Starkie (p.-12) says: “From the commencement of the reign of Elizabeth such actions began to multiply^ with great rapidity, there being but few reported cases during the preceding reigns. . . No settled rule of ascertaining their limits seems, however, to have been established at any early period, and the mass of conflicting decisions to be met with in the books, exhibits convincing marks of the precarious and fluctuating principles on which they were grounded. A struggle between two opposite inconveniences seems to have created this wavering in the minds of the judges.”
The fear of encouraging idle and vexatious litigation by too great a facility to this species of action on the one hand, while on the other the danger to the public peace by refusing legal redress to an injured party, who, being denied a legal remedy, was likely to resort to personal violence, were the opposing influences which led to conflicting decisions.
Early in the history of the law upon this subject in the *328 United States, this state of uncertainty was the subject of frequent remark and consideration.
Judge Spencer, in the case of Brooker v. Coffin, 5 John. 188, says: “ There is not perhaps so much uncertainty in the law upon any subject, as when words shall be in themselves actionable. From the contradictions of cases, and the uncertainty prevailing on this head, the court think they may, without overleaping the bounds of duty, lay down a rule which shall conduce to certainty.”
This uncertainty led to many attempts to formulate a rule which should be at once simple, comprehensive, and easy of practical application.
In this effort Onslow v. Horne, 3 Wilson, 177, and Brooker v. Coffin, 5 John. 188, may be regained as leading cases.
In each the controlling test of what words were actionable was that they import a crime punishable by the temporal courts.
Perhaps the chief reason why there was so much diversity on this question grows out of another, and that was — What is the foundation of the action of slander itself?
Was it maintained at common law because of the jeopardy of punishment, or of the injury to reputation of the person ? If the court assumed that jeopardy of punishment was the foundation of the action, and from that stand-point attempted to reason out a rule, the result was necessarily different from what it would have been had it assumed that injury to reputation was the foundation.
Without stopping to trace the history of this controversy, It is sufficient to say that it has now long been settled as the common-law rule, that in the absence of statutory regulation, words, to be actionable, must come within one of the following classes:
I. The words must import a charge of an indictable offense, involving moral turpitude or infamous punishment ; or,
II. Impute some offensive or contagious diseases calculated to deprive the person of society ; or,
*329 TTT- Tend to injure him in his trade or occupation.
These rules have long been recognized and repeatedly-affirmed in Ohio.
In Hollingsworth v. Shaw, 19 Ohio St. 432, the first rule is cited by the court in these words: “ The general current of decisions warrants us in saying that to render words actionable per se, on the ground that they impute criminality to the plaintiff, they must he — 1. Such as charge him with an indictable offense; and 2. The offense charged must involve a high degree of moral turpitude, or subject the party to infamous punishment; ” and to make this rule «specially emphatic, the court adds, quoting from Starkie: “ No charge, however foul, will he actionable without special damages, unless it be punishable in the temporal courts cf criminal jurisdiction.”
In Alfele v. Wright, 17 Ohio St. 241, the same learned court repeats the rule, and adds: “ The only innovation upon this common-law rule which has hitherto been made in this state, is in regard to the slander of a female; but this exception has never been extended to the other sex where the words are of a similar character. And we neither feel disposed nor authorized to extend the innovation.”
Wilson v. Robbins, Wright, 40, is one of the earliest cases in regard to this innovation. It is there said: “ To charge a man with adultery is not actionable, though to charge a woman is. This court have gone no further. Their going -that far is conceded to be an innovation upon the common-law rule. We are unwilling to carry the exception further, and have so decided heretofore.'
Repeated appeals have been made to the Supreme Court to make further innovations, but without avail, if we except the ease of Malone v. Stewart, 15 Ohio, 319, which stands by itself. Alfele v. Wright was a charge of the highest degree of moral turpitude, burglary, and larceny of a store, in which he was a partner, and yet, because of a technical rule of criminal law, that a man could not be indicted for ■such an offense, the words were held not aetiouable.
Hollingsworth v. Shaw was a charge of desertion made *330 during the late rebellion. This charge, if true, subjected the party to infamous punishment, and even death by court martial, as well as involved the highest degree of disgrace and infamy, and yet, because it was not an indictable offense, the right of action was denied.
So to say of a person that he had negro blood in his veins (Wright, 40), was more effective than the small-pox in excluding him from society, yet it was not actionable.
Many other cases might be cited in Ohio to show how inflexibly the courts have refused to make further innovations.
It is conceded that the charge here is of the highest degree of moral turpitude, and tends to exclude a man from all decent society, and yet it is not a crime, punishable in the temporal courts, and. therefore it is not actionable.
Massachusetts, New York, Pennsylvania, Virginia, and perhaps other states, have made sodomy an indictable offense. In England, by statute, 27 Henry VII., c. 6, it was made felony without benefit of clergy. Prior to that time, for a long period, Blackstone says it was punished only in the ecclesiastical courts. 4 Blackstone.
Wherever such a statute exists, the charge is actionable; but in the absence of legislation upon the subject, it would savor of judicial legislation to make any further.innovation on the rule.
In this conclusion, we are supported by Coburn v. Harwood, Minor (Ala.) 93; Estes v. Carter, 10 Iowa, 400.
In view of the injurious consequences of such a shocking charge, we confess to being strongly tempted to make one further innovation; but looking back to that period of doubt and uncertainty to which we have referred; and remembering that it is of more importance to have a rule, well understood and easily defined; of practical application, and sufficiently comprehensive as to meet the ordinary demands of justice, than to have one varying-with the changing views of the judges; or variable standards of moral conduct in different communities, or at different periods, we are unwilling to make further innovation, but prefer to *331 remit the matter to the only proper tribunal — the lawmaking power of the state.
To hold that if the charge involves great moral turpitude, it shall be actionable, leaves the matter open to ali! manner of dispute. Whose standard of morality shall betaken ? To say that the English common law shall be-the standard is worse still, as it would make actionable, in Ohio, a long list of acts which were crimes by the common-law, but which the more civilized and enlightened people-of modern times do not regard as such. We prefer to-look to the laws of the land, rather than to the obsolete-codes of the past, or the ever-changing standard of human-conduct.
In view of these considerations, we are content to adopt, the well-considered language of the learned judge, in Alfele v. Wright, and say: “We feel neither disposed nor authorized to extend the innovation.”
Whether in view of the exception to the common law rule, made in Ohio and some other states, in favor of females, such words as to them would be actionable, we do-not decide,

Judgment affirmed.

Day, Wright, and Ashburn, JJ., concurred; Scott,. Chief Judge, dissented.