Douglass, J.
William N Simmons, tbe plaintiff below, brought an action against Calvin Hilbrant alleging that tbe defendant slandered and defamed his character by speaking certain words set out in bis petition; and prays damages in the sum of $20,000. Tho defendant denies the speaking-of the words and denies malice. The case was tried to the jury and resulted in a verdict of $800, in favor of the plaintiff. Error is prosecuted to this court, and there are five assignments of error, but the ones relied upon in argument are: I. That the petition is insufficient; thet the .words are not slanderous per se; that appropriate allega,, tions and proof could only make them so. 2. That the verdict and judgment is against the weight of the evidence. 3. That'jthe damages are excessive. 4. Error in ruling out theylsposition of one Howell, this deposition strongly tending'to prove the truth of tbe charge.
*124 . First addressing ourselves to the claim that the petition is insufficient in that the words stated are not slanderous per se, and only become so by means of allegations of extraneous facts, The petition, omitting formal parts, is:
“In place of trying to track aiound here, you (meaning the .plaintiff) “had better been to home tracking the man that burned your house and you would track him in your own door. You (meaning the plaintiff) “know you burnt it” (meaning plaintiff’s house). “You” (meaning the plaintiff) “took the money and built your barn with it.” Meaning thereby that the plaintiff had burned his own house to get the insurance money, and had taken the insurance money and built his barn.
The first question presented is: Docs this petition state a cause of action ? Some of the questions here presented, namely this first one, is one of considerable difficulty, •one in which the court^k not in common agreement. A majority of the court is of opinion that the petition does state a cause of action, and that the innuendo pointing the meaning of the words is not overdrawn, and that it is the only logical deduction therefrom.
It would be an endless task and a thankless one to attempt to reconcile all the cases, as to the real foundation of slander. Some of the earlier cases hold that the real foundation' of slander was jeopardy of punishment, and others hold: injury to the reputation of the person. Words, to be actionable, must come within one of three classes (as set out in the 27 Ohio St., 328): “The words must import a charge of an indictable offense', involving moral turpitude or itnfamous punishment;” (and within that class this case must fall). 2 “Impute some offensive or contagious disease calculated to deprive the person of society; or 3. Tend to injure him in his trade or occupation. ” Within these three classes, we have slander.
I will make reference to the 27 Ohio St., 326, the syllabus of which is:
*125 “Words spoken, charging a man with sodomy, are not actionable without alleging special damage; such an act not having been made a crime or offense indictable and punishable by law.”
The court, on page, 329, enters upon this discussion .(reviewing the 19 Ohio St., 432) the first rule .is cited by the court in these words:
“The general current ofdeeisions warrants us in saying that to render words actionable per se, on the .ground that they impute erimnality to the plaintiff, they must be, 1: such as charge him with an indictable offense; and 2: the offense charged must involve a high degree of moral turpitude, or subject the party to infamous punishment”, and to make this rule especially emphatic, the court adds, quoting from Starkie: “No charge, however foul, will be actionable without special damages, unless it be punishable in the temporal courts of criminal jurisdiction.”
On a review of the 17 Ohio St., 241, the court makes this obseravtion:
“The only innovation upon this common law rule which has hitherto been made in this state, is in regard to the slander of a female; but this exception has never been extended to the other sex where the words are •of a similar character. And we neither feel disposed nor authorized to extend the innovation, Wright’s Reports, 40, is one of the earliest cases in regard to this innovation. It is there said: To charge a man- with adultery is not actionable, though to charge a woman is, This court have gone no further. Going that far is conceded to be an innovation upon the common law rule. We are unwilling to carry the exception further, and have so decided heretofore.”
Then a reference is made to the 15 Ohio, 319, which •case, they say, stands alone The charge in the case in 17 Ohio St., 241, was one of a serious character, buiglary, and was between partners; and because a partner could not be indicted for stealing from himself, they held that there was no slander, per se, in what he said.
*126 Hollingsworth v. Shaw, 19 Ohio St., 432, was a charge of desertion against a soldier. I will read what the court say:
“This charge, if true, subjected the party to infamous punishment, and even death by court martial, as well as involved the highest degree of disgrace and infamy, and yet, because it was not an inductable offense, the right of action was denied. So to say of a person that he had negro blood in his veins (Wright’s Reports 40), was more effective than the small-pox in excluding him from society, yet it was not actionable.”
I simply cite these to show how rigorously the rule has been held and followed that words, to be actionable, must support a charge of an indictable offense involving moral turpitude or infaomus punishment. The substance of the statute is that any person found guilty of this offense viz.,, burning his property to secure the insurance, shall be imprisoned in the penitentiary not more than twenty years. As preliminary, I desire first to cite section 5093:
“In an action for a libel or slander it shall be sufficient.to state, generally, that the defamatory matter was published or spoken of the plaintiff; if the allegation be denied, the plaintiff must prove the facts showing that the defamatory matter was published or spoken of him; and in such action it shall not be necessary to set out any obscene word, but it shall be sufficient to state its substance.”
Referring to Kinkead, vol. 1, sec 754, we have a construction of this statute as it refers to the colloquium and innuendo, which we think important:
“Codes of other states provide in so many words that it is not necessary to state extrinsic facts to show the application of the defamatory matter to the plaintiff. These provisions have caused confusion upon the question of the necessity and use of the innuendo and colloquium, as well as the necessity of averring extrinsic facts. It seems to be considered by some authorities that the code dispenses with-the necessity of pleading extrinsic facts. But the innuendo *127 must be used where the publication does not appear on its face to be of a defamatory character, and only becomes so by reference to extrinsic facts, in which case the existence of those facts must be alleged to show a libelous meaning, But where the words themselves tend to injure the reputation, the allegation of extrinsic facts is not necessary, The-office of an innuendo is to direct attention to- the charge made. ”
Then it is stated, and truly,- that it does not enlarge or broaden the charge, but points the meaning. “The provisions of'the code heretofore referred to were clearly intended to dispense with the necessity of the colloquium, as it provides that it must be stated that the words were spoken of the plaintiff. In any event, if it be denied that the words were spoken of and concerning the plaintiff, they must be established. It is, however, dispensed with only when it is unnecessary to show that the defamatory words applied to the plaintiff, The averments required in common-law pleading to show the meaning of the words must still be made.”
That is the view of this text writer:
“The averments required in common-law pleading to show the meaning of the words must still be made. ” This is pointed here by the averment: “took the money and built your barn with it,” meaning thereby that the plaintiff had burned his own house to get ths insurance money, and had taken the insuarnce money and built his barn.
We have examined a large number of authorities, and, recognize the force of the position assumed. Is the innuendo in this case — “meaning thereby that the plaintiff had burned his own house to get the insurance money, and had taken the insurance money and built his barn” — justified by what is stated? If it is not, it counts for nothing; it cannot-enlarge or broaden, but it points the meaning.
In 16 Am. St., 422, the language was not choice, but it was: She is ornrier than two hells, and I can prove it, “meaning to charge her with being a whore.” That was all that was stated; the innuendo was: “meaning to charge- *128 her with being a whore. ” The court in discussing that ¡says:
“It is charged in the petition that in using the expression defendant meant to charge plaintiff with being a whore The words themselves do not signify that. Without explanation, we regard them of very uncertain meaning.”
There was no evidence admitted except as to how the hearers understood that. Then they enter into a discussion here, saying that lexicographers have not attempted >to define the word “ornery”; that they have, not given it ■ any authoritativo recognition; that it is a sort of provincialism; and about the most that can be said of it is that it was -intended to cast some bad aspersion upon somebody, and so ■ on. But after that discussion the court say:
“In such cases the expressions are ambiguous. They may ’have one meaning or another, and the intent and understanding must be established by proof.” The defendant asked the court to give to the jury the following instruction, which was refused: “Thecourt instructs the jury that to say of a woman or girl that ‘she is ornrier than two hells’ will not -warrant the innuendo, meaning, or construction that she is a prostitude, although you may find, from the evidence, that the defendant did speak of and concerning the plaintiff the ■above words. Then, upon that branch of the case, you are instructed that the plaintiff cannot recover, and you will find for the defendant.’ Of his refusal the defendant complains. - The instruction merely presents a question as ~to the sufficiency of the pleading. The point urged was as manifest on the face of the petition before answer as after the taking of the testimony. If the objection could have been taken by motion, or demurrer to the petition, and was not, and the party answered and proceeded to trial, it was a waiver of the objection and cannot afterwards be raised by an instruction to the jury.”
The court decides this:
“Where a petition in slander charges that defendant said of and concerning plaintiff that ‘she is ornrier than two hells’, meaning to charge her with being a whore, the word 'ornrier’ being of doubtful and uncertain meaning, the *129 intent and meaning of its use as understood by those who heard it may be established by proof, but the testimony of witnesses who did not hear that word used but heard other words not slanderous in character, is inadmissible to prove their understanding of the word charged.”
The court there holds that a petition stating those words as spoken, and then the innuendo; meaning thereby that she was a whore, is sufficient to make ■a good petition, and justifies proof as to the understanding ■of the parties who heard the words. In analogy to this, ■how stands our case? “You know you burnt it; you took the money and built your barn with it.” If a hundred persons heard that stated, no one could understand it to mean ■anything else than that the property was insured, and that ihe got the money from the insurance company and built a ■barn. There is no other logical construction, That being ‘the only logical deduction form the words spoken, it is a proper innuendo, and makes a case, as we view it.
22 Am. St., 126, is an instructive case, because there :are so many specific averments, and then an innuendo that we think is a good deal more strained than in this case, that •a different logical deduction could have been made from the words charged. The defamatory words relied upon are: “She keeps a common open house (meaning that plaintiff kept a ■common open house of ill-fame). She is nothing but a whore, anyway (meaning that the plaintiff was a common prostitute, and kept a house of ill-fame;” (This is a Vermont case). Our view is that keeping a common open house and charging her with being a whore anyway, that while the innuendo might point with some logic to the faat that she kept a house of ill-fame, it is not as conclusive as "the case at bar; because another logical deduction could be made that the one pointed by the innuendo. The court say:
“The question is not, as assumed by the defendant, *130 whether this is the only natural meaning of the words ‘common open house’, In determining the meaning of this particular phrase, the language used is to be taken together, and the question then is, What might the person to whom the words were spoken have properly taken them to mean?”
If that is the question, then this case at bar is safe; because what other thing could the person to whom the words were spoken have taken them to mean in the case at bar? Again the court adds; “Might they not, without other aid, have naturally conveyed the meaning assigned by the innuendo?” That gives us wide latitude in the case at bar§
“If so, the words are legally susceptible of the meaning charged, and the count is sufficient after verdict. The-charge of keeping a common open house, standing alone,,' could not support an innuendo that a house of ill-fame wa& meant, without the aid of special prefatory averments, But when it is said cf a woman who in the same connection is-declared to be a prostitute that Bhe keeps a common open-house, we think the words are legally susceptible of the-meaning here ascribed to them, and the jury has found by its verdict that they were used by the defendant in that* sense. ”
We think that that case is very much wider and very much more doubtful than the one at bar. This is all I desire to say on this proposition. An examination of the-record satifies us that the judgment and verdict is not against the weight of the evidence as to the plaintiff’s right, to recover some amount at least.
As to the exclusion of the Howell deposition: This was" excluded on the ground that it tended to prove the truth of the words spoken under a general denial, and that proof of the truth of the charge was only admissible under a plea of justification. The authorities upon that proposition that are in conflict in this regard are the 5 Ohio St., 293, and 32 Ohio St., 604. The syllabus in 5 Ohio St., 293 is as follows;
*131 .“Under the plea of the general issue in an action for a libel, it is competent for the defendant, with a view of mitigating damages, to give evidence of a general or common report in circulation prior to the publication complained of, that the plaintiff was guilty of the charge imputded to him; but such evidence is only competent to rebut the presumption of malice, and not by way of affecting or attacking the character of the plaintiff. “Under the plea of the general issue in such action, evidence of particular facts or circumstances calculated to have induced mistake,or to have misled the party in the publication of the slander, is competent in mitigation of damages by way of rebutting the presumption of malice, and that, too, whether the evidence tended to prove the truth of the charge or not.”
The opinion in this case, by Judge Bartley, goes to the length of holding that, under the general issue, or general denial, evidence tending to prove the truth of the charge, even if it went so far as to prove its truth to the entire satisfaction of the jury, may be given in evidence, and that the court will take care of it; not that it can defeat a recovery in any instance, but that it can be used simply to mitigate damages down to the very edge — to nominal damages. I will read the conclusion of the opinion in this case. First citing 18 Conn. Kep., 464, then the court proceeds:
“It has been said that a defendant could avoid the difficulty of this rule by putting in a plea of justification, and thus introducing his evidence, which, although it might not fully support the plea, would be considered by the jury in mitigation of damages. This would, however, introduce a fallacious principle in pleading. And besides the plea of one defense as a sham to enable the party to give evidence of another and different defense, it would subject the defendant to all the consequences of a repetition of the slander, which would perpetrate the charge upon the public records without proper and justifiable cause. A plea of the truth of the slanderous charge, when made in good faith, if unsustained by the evidence, always tends to aggravate the case and increase the damages. And when the truth of the charge is plead, and spread upon the record wantonly, or *132 unnecessarily and improperly, it entitles the plaintiff to what would amount to exemplary damages according to the circumstances of the case. When, therefore, a party has made the charge under-an honest but mistaken belief of its truth, induced by circumstances which came to his knowledge tending to show it to be true, it would be a denial of justice to compel him to incur the consequences of a plea of justification in order to introduce evidence which, although it might not sustain a plea of justification to the satisfaction of the jury, would greatly tend to mitigate the damages by- repelling the presumption of malice.”
“The reason assigned for the rule that the plaintiff must be notified by a plea of justicfiation, before a defendant can introduce evidence tending to prove the truth of the charge, may be sufficient where the truth of the charge is relied on as a bar to the action; but it is wholly unsatisfactory and insufficient to justify a denial of justice, where the purpose of the evidence is to mitigate the damages by disproving malice. The party who institutes an action for slander or libel, always informs himself of the means of the defendant to establish the truth of the charge. In the absence of a plea of justification, evidence tending to prove the truth of the charge, offered for the purpose of repelling proof of malice, even if it went so far as to prove the truth of the charge to the entire satisfaction of the jury, could not prevent the plaintiff from recovering damages to some amount. No plea or notice of matter in mitigation is requisite; and this circumstance ought not to effectuate a denial of justice, when the evidence in mitigation, by way of repelling the proof of malice, tends to prove the truth of the charge.”
In the 82 Ohio St., 604, the court holds, in the second paragraph of the syllabus:
“In an action of slander by a woman, where the alleged defamatory words impute to her a want of chastity, specific acts of sexual intercourse by her cannot be given in evidene, for any purpose under the issue *133 made by a general denial.” And holds that where her character for chastity is impugned, specific acts of' sexual intercourse cannot be given, but her general reputation for that vice of character can be assailed in mitigation of damages. The court, in the discussion of this case, clearly says, in the face of the authority of the 5 Ohio St., which has never been overruled, that the absolute truth, under a-general denial, cannot be given in evidence. Since they have given us our choice between these two eases, we think that the 5 Ohio St. is sustained by the better reasoning;, and that it is proper, and ought to be the rule to admit evidence that would go, as is said by Judge Bartley, “to the entire satisfaction of the jury” of the truth of the charge;-, always, however, circumscribed and limited in the charge of the court to its purpose, and that its purpose is only-mitigation; and that it cannot defeat a recovery in any event, but only to mitigate the damages by disproving-malice.
But it is not really necessary to decide this point in this» case. This deposition shows that what it contains could not have been known to Hilbrant; and, therefore, restricted as it should and ought to be in mitigation of damages-alone, by disproving malice, it could not have any such effect; if limited, it would amount to absolutely nothing;, and therefore there was no error in the exclusion of that evidence for that reason. He knew nothing about what was contained in that deposition.
The last question is as to whether the damages awarded are excessive. The facts in this case show that these parties were out hunting — that is, this crowd; and, among them was Simmons, the plaintiff. There is evidence tending to show that there was a rabbit shot on the farm of Mr. Hilbrant. Whether that be true or not, they got into a controversy with Hilbrant; a quarrel ensued; Hilbrant’s son was called, and came with some stones in his hands:; *134 --¿they had a war of words; a charge was made by one of the «parties that Hilbrant had cut the fence of a neighbor; the . attention of Simmons was called to that, and he stated that -;.4hat was true; that they had tracked a man with large feet . and pigeon toed into his lane. And, under this kind of provocation, this retort was made which amounted to this «■slanderous charge. There is no evidence anywhere in this ...record that shows that Hilbrant, with malice (which is the .ureal foundation of slander) on any other occasion than when ■¡•he was in the heat of anger, and near this party who seemed to live in a glass house and threw the first stone and got back this retort that amounted to this slanderous charge- — ■ vthere is no evidence, I repeat, either before or after, that he repeated this slander, or in any way aggravated it; and -.-the court is of the opinion that the damages given are excessive; and our judgment is that the plaintiff be required to remit $500, of this judgment of $800, and if this is done, the judgment so reduced will stand; otherwise, it will be reversed and remanded.
Kibler & Kibler, on behalf of Plaintiff in Error.
S. M. Hunter and Fulton & Fulton, on behalf of Defendant in Error.
Smyser, J., dissents from first proposition of the syllabus.