(Huron Co., O., Court of Common Pleas.)
September Term, 1897.

## SOPHIA SHOURDS v. AUGUSTA ALLISON.

1. A judgment of the court of common pleas becomes dormant and ceases to operate as a lien on the land of the judgment debtor, if execution be not sued out "within five years, from the date of the judgment." Rev. Stat., 5380.
2. "The date of the judgment," as intended by the legislature, is the day on which the judgment attaches its lien upon the land of the judgment debtor.
3. Except in certain specified cases, the lien of a judgment binds the land of the debtor in the county, from the first day of the term at which the judgment is rendered. Rev. Stat., 5375.
4. The lien is but an incident to the judgment, and was made to relate back and attach as of the first day of the term, because of the fact that the judgment itself relates back to that day.
5. On all judgments of the court of common pleas where, under sec., 5375, the land is bound from the first day of the term, the judgment will become dormant and cease to operate as a lien unless execution is sued out within five years from that day. To keep the judgment from slumbering and preserve the lien, it is not sufficient to sue out execution within five years from the day when the judgment is actually rendered or entered.

---

WILDMAN, J.

In this case, a question of statutory construction is raised, which is a matter of surprise to find unanswered by any express adjudication. After the lapse of nearly a century since the organization of our state, it might not unreasonably be supposed that courts would have unequivocally determined as to just what is the date of a judgment.

That lands of the debtor, within the county where the judgment is entered, are, except in certain specified cases, bound from the first day of the term at which judgment is rendered, is expressly provided by the statute (Rev. Stat., 5375); but it is contended that the period of five years within which execution must be sued out to prevent dormancy, does not begin to run until the date of the actual entry of the judgment on the court's journal.

By the terms of the dormancy statute, (Rev. Stat., 5380), it is provided that "if execution * * * * be not sued out within five years from "the date of the judgment, * * * such judgment shall become dormant and shall cease to operate as a lien," etc.

The question presented, then, is,—what is the precise significance of the phrase, "date of the judgment," as used in the section last quoted?

The question becomes important in view of the facts presented in this case. The suit is brought to quiet plaintiff's title to certain lands in this county, described in the petition. The defendant, Augusta Allison, is a judgment creditor whose judgment was rendered at the May term of this court, 1890. The term began on the 12th day of May, 1890, and the plaintiff's action was then pending, but the judgment was not in fact entered until the 29th day of the same month. On the 24th day of May, 1895, when more than five years had elapsed from the first date mentioned, but less than five years from the entry of the judgment, an execution was issued and levied. Meanwhile, to-wit, on or about the 5th day of February, 1894, while said judgment was in full force, the plaintiff purchased the property from a grantee of the judgment debtor.

Other questions are raised in the pleadings and on the trial, but the sole question which it is now my purpose to determine is that already stated, whether or not the judgment became dormant and ceased to operate as a lien upon the land, by reason of the fact that execution was not sued out within five years from the first day of the term at which the judgment was rendered.

If it did so cease to operate, the subsequent levy of an execution as invalid, and the plaintiff's title should be quieted. If, on the other hand, the statutory period within which execution should issue to preserve the judgment from dormancy and the lien from destruction did not expire until five years from the actual entry of the judgment, the other issues in the case remain for later consideration.

The question presented is one which, it might be supposed, would have arisen very early in the courts; but a somewhat careful research among the reported adjudications in our state, has failed to disclose a case in which it has been presented and passed upon. Several dicta of eminent judges of our supreme court have been found and quoted by counsel in argument, and some of them are valuable as indicating the trend of opinion of such judges, but in no instance was the precise question here presented involved.

The statute, looking at the phrase employed, requires the execution to be sued out within five years, from what? Not the entering of a judgment on the trial docket or the journal, which is a ministerial act, the mere recording of the judicial act of deciding or ordering which has gone before (See Freeman on Judgments, sec. 38.); nor even in terms within five years from the rendition of the judgment; but the exact phrase is, ' the date of the judgment" and our inquiry must be whether these expressions are convertible ones, or whether the date of the judgment, as understood by the law-makers, was one thing, and the time of its rendition or rendering another.

The distinction becomes important, because the latter phrase has received such

judicial construction as must be potent in the construction of the first if they are equivalent in meaning.

It was expressly held in Nolen v. Urmston, 17 Ohio, 170, a case cited by counsel for Miss Allison, and referred to with much force in argument, that "a bill of review may be filed within five years from the day on which the decree sought to be reversed was rendered; the time to be counted from the day of the rendition of the decree, and not from the first day of the term."

This decision was in construction of a statute providing that a bill of review may be filed "at any time within five years next after rendering such decree," and the Judge delivering the opinion, says: "A decree is not in fact rendered, until the day it is pronounced and entered."

Ib., p. 171.

This old procedure by bill of review was directed against decrees in chancery. It has been held by the supreme court to be inconsistent with the code of civil procedure, and not to exist "in respect to an action commenced and prosecuted under the code," (see Corry v. Campbell, 34 Ohio St., 204); but of course, any judicial construction which its language has received, is of force so far as applicable to our existing statute. The remedy by bill of review has been in a much modified form embodied in our late statutory revision. (See secs. 6734-6740.) Analogous provisions for the reversal or modification of judgments and final orders are found in secs. 6708, 6709 and 6710, of the Rev. Stats., and as to these a limitation of time within which the proceedings must be instituted is found in sec. 6723. In this section as in the law of 1831, construed in the case of Nolan v. Urmston, supra, and as in the modified proceeding for bills of review in our present system, (R. S., 6740), the limitation period begins by the express requirements of the several statutes, with the "rendition" of the judgment, order, or decree. or the "making" of the order. Construing another statute containing the same phrase (S. & C., p. 1106,) the supreme court say that "the time begins to run, not from the first day of the term at which the judgment sought to be reversed was rendered, but from the day on which it was actually rendered." (West v. Meddock et al., 16 Ohio St., 417.)

The use of the words "actually rendered" by Judge Brinkerhoff, who spoke for the court, implies a supposition that there might be a constructive rendering which by some legal rule would start the limitation law in motion at a date prior to the actual rendering or pronouncing of the judgment. And clearly such must have been the contention in the case, notwithstanding the phraseology of the statute.

COPYRIGHT, 1898, BY CARL G. JAHN.

This leads me to a consideration of that legal fiction which, for many years before the adoption of our system of civil procedure, treated the term of a court as consisting of but one day, the day of its opening, and judgments rendered during the term as bearing date on that day. No intelligent examination of the question of legislative intent which has been submitted to me, can ignore that fiction.

The origin of the idea is perhaps not very important. Whether the rule was adopted because of the original actual shortness of the terms; or, because of the other rule early established that courts have control of their own dockets and journals for purposes of amendment or reversal during the term; or because it was deemed inequitable that one creditor should succeed in obtaining a prior judgment simply because he was able to bring his case first to hearing, while other actions were pending against his debtor, or whether it was to forestall fraudulent transfers by the debtor himself, it will not be profitable just now to inquire. It is enough, if in contemplation of law the judgment bore date as of the first day of the term, whatever the reason for the fiction.

Such fictions are not unfamiliar to lawyers. Our civil code expressly abolished all fictions in pleadings (R. S., 5058), but the one under consideration does not pertain to a pleading, and its existence has been recognized in one form or another by courts and lawyers since the adoption of the code as before. Doubtless, there is a general tendency to abandon fictions for truths, forms for realities. as the administration of law becomes more just and less technical, but any interpretation of the phraseology of a statute must take cognizance of the use of such phraseology familiar to the lawmakers at the time of the enactment.

Our lien statute (R. S., 5375) and our dormancy statute (R. S., 5380), are an evolution from some very ancient laws. A judicial tribunal which makes no inquiries and utters no commands would be a worthless institution. There have never been such. As long as there have been courts, there have been judgments, and not unnaturally, questions arose at an early day as to how and how far, judicial determinations should bind the property of judgment debtors.

Very anciently the judgment lien was adopted, (see Freeman on Judgments, sec. 339), and as a corollary to the establishing of the lien itself, was the fixing of its date. This was by no means a settled matter until it became so by legislation in the several states. The frequent conflicting claims to the debtor's property among judgment creditors and other lien holders and purchasers, made the date when the lien attached a more important matter than the date of the judgment itself. The judgment was

between the plaintiff and his debtor. It affected them only, and except as a matter of convenience, its precise date was not important.

Not so as to the attaching of the lien, for here other interests were involved, and recognizing the apparent inequity of dating back the lien of a judgment so as to give it priority over deeds and mortgages executed before its actual rendition, but after the first day of the term, many of the states, I believe most of them, have not followed the example of Ohio in attaching the lien as of the first day of the term.

Why, then, in Ohio, this apparent inequity? Why adopt for liens the doctrine of relation which has been defined by the supreme court of the United States as "that principle by which an act done at one time is considered by a fiction of law to have been done at some antecedent period?" (Gilson v. Chouteau, 80 U. S., 537.)

The correct answer to this inquiry carries with it, I am forced to believe, the correct answer to the question involved in our case—the question when the judgment bore date so as to start the dormancy period.

It must not be forgotten, that however ancient was the recognition of the judgment lien, the declaring of judgments was still more ancient. "At common law," says Mr. Anderson in his Law Dictionary, p. 578, under "Judgment," "a judgment was not a lien upon "reality." The lien, however, early became an incident to the judgment, a graft upon it. The judgment could stand alone and be paid or enforced without ever binding the debtor's land. Not so the lien. It was not a self-sustaining, independent thing, but owed its existence to the judgment which it aimed to secure.

"The statutory liens are nothing but incidents and aids to the execution of judgments," etc.

Judge Read, in Myers et al. v. Hewitt et al., 16 Ohio, 450.

Nor is it to be forgotten, that under the common law, it was the judgment (not the lien, unless as an incident to the judgment), that related back to the first day of the term. See Urbana Bank v. Baldwin, 3 Ohio, 65.

If the lien attached on the first day of the term, it was as a result of the relating back of the judgment. The lien did not cause the judgment, but the judgment caused the lien. To use the words of Chief Justice Collett, in Thompson, Admr. v. Atherton, 6 Ohio, 31, citing with approval Urbana Bank v. Baldwin, supra, "where a suit was pending at the commencement of a term, the judgment rendered on any subsequent day of the term related back to, and attached its lien, as of the first day of the term." *

Cases using similar language in recognition of the doctrine that it is the judg-

ment which relates back, and that the attaching of the lien is a result of such relation, might be multiplied. I will not cite them, but will, in passing, invite attention to the elaborate and interesting foot note of Mr. Wilcox to Bank of Canton v. Commercial Bank, 10 Ohio, 71, 74, wherein the pertinent decisions of our supreme court to that time, are collated and classified.

Our present section providing for judgment liens (5375), is an outgrowth from a law in force at the organization of the state.

Long before the adoption of our code of civil procedure, while the common law was still the recognized and venerated system of practice, when lawyers and intelligent legislators must have known that judgments by legal fiction bore date on the first day of the term, it was provided by legislative enactment, that "the lands and tenements of the judgment debtor should be bound and liable to the satisfaction of the judgment from the first day of the term" in which such judgment should be obtained. From an examination of these early statutes, I cannot resist the conclusion that the legislators made provision for the dating of the lien on the first day of the term, because, and only because, they intended to make the lien concurrent with the judgment. There would seem less reason in equity for antedating a lien than for antedating a judgment. But they did not attempt to antedate a judgment in term. It did not occur to them that it was necessary to legislate as to the date of the judgment. That was assumed. It was important to fix the exact day when liens should attach, and the date of the judgment seemed the appropriate time. Hence, the statute in the form which it then assumed and has since retained. But to meet any possible danger of fraudulent collusion between debtor and creditor, the legislature added the proviso, that as to judgments voluntarily confessed, they should not have a lien on realty except from "the day on which they were" actually signed and "entered."

At first, there was no dormancy statute, but in 1816 an act was passed, out of which, after undergoing various changes, grew our present sec. 5380. By it, "if execution be not sued out within five years from the date of the judgment, such judgment shall become dormant and shall cease to operate as a lien," etc.

Here are two things enacted:

(1.)—The judgment becomes dormant: (2.) It ceases to operate as a lien. It cannot cease unless it began. When did it begin to operate as a lien? Manifestly at the date of the lien, i. e. the first day of the term in which the judgment was rendered. If the judgment was then first in operation, that day may, I think, properly be termed its date.

I think that the legislature intended by the two sections which have been under consideration, the lien section and the dormancy section, to make the judgment and the lien begin together. For five years from its date, the judgment will not slumber, although no execution issue. And Judge Read, in Myers et al. v. Hewitt et al., 16 Ohio, 450, says: "The lien of a judgment under the statute subsists and continues for the period of five years." He seems to assume that the lien period and the dormancy period are exactly coterminous, beginning and ending together. But this is inconsistent with dating the lien one day and the judgment another.

In this connection it is well argued by counsel that the legislature can hardly be supposed to have intended, that while all liens of judgments rendered in a term in pending causes attach on the same day, by the lien section they expire at different times by the dormancy section. Under such an interpretation of the law, the younger the judgment, the longer would be its lien.

The legislature did not intend to introduce such inequity and complexity into the system. On the other hand, to begin and end judgments and liens together, creates no confusion or inequality.

The conclusion at which I have arrived, that the date of the judgment is the first day of the term, and that the dormancy period then begins to run, may be inconsistent with dicta in some of the adjudged cases; but I think that it is in harmony with the decisions and is supported by correct principles of statutory construction. Nor is it unsupported by judicial opinion. Judge Day, in Davis v. Messinger, 17 Ohio St., 237, makes the broad statement that "except as otherwise provided in special cases, judgments, date as of the first day of the term, and become liens on lands on that day," etc. True, his language is broader than required by the issues decided, but even as dictum, his opinion so positively expressed, is entitled to respect.

Finally, and as confirmatory of the view which I have expressed, I cite the settled practice of the courts as to computing interest on money claims to the first day of the term, and interest on judgments from that day, without regard to the time when the judgment is actually rendered. Such practice has received the sanction of the supreme court, although it has no express statutory basis. It is allowable only upon the theory that the first day of the term is by legal intendment the date of the judgment. In Loomis v. Building Ass'n., 37 Ohio St., 392, 396, interest was allowed from the first day of the term, not only on the judgment debt, but on the costs as well. And as long ago as 1859,

the Scioto county district court, considering this same matter of interest, held:—"In pending suits, judgments should be taken as of the first day of the term; in other cases as of the day when entered. Interest before judgment is to be collected in such case up to, and after judgment, from those dates." (Kimball v. Connally, 1 Western Law Monthly, p. 402.) In the same case, in the court's opinion, I find the rule stated as follows:

"Where the action is pending at the commencement of the term at which a judgment is entered, it takes effect from the first day of the term, and interest should be calculated on the debt up to that day, and from that date will the judgment draw interest."

It is my conclusion on the records introduced, and the conceded facts, that Miss Allison's judgment became dormant and lost its lien at the expiration of five years from May 12, 1890. It is unnecessary to consider the other questions raised on the trial. The plaintiff is entitled to the relief for which she prays.