O. E. PHILLIPS v. MICHAEL LEJUNE.

1. PLAINTIFF NOT REQUIRED TO ELECT BETWEEN LANGUAGE PLEADED AND OTHER SLANDEROUS LANGUAGE IN EVIDENCE.

In a slander case the only language which can be recovered upon is that complained of in the petition, and the plaintiff will not be compelled to elect whether he will proceed upon the language set forth in the petition or other slanderous words disclosed by the evidence. Language not pleaded can be considered only for the purpose of showing malice.

2. INJURY TO FEELINGS AN ELEMENT OF SLANDER.

In slander, injury to the feelings of plaintiff may be presumed and considered by the jury. Hence, the plaintiff may properly offer evidence as to the effect of the language complained of, upon him, as that his feelings were wounded and that he was unable to sleep in consequence thereof.

3. WORDS IMPUTING CRIME RELATING TO TRANSACTION NOT CRIMINAL NOT SLANDER.

An action of slander cannot be maintained for words which impute a crime, where, from all that was said at the time the words were spoken, it appears that the words had relation to a transaction that was not criminal, and that they must have been so understood by the hearers. Undivided crops on a farm are not the subject of larceny by the tenant, nor does charging a tenant with stealing apples, held in common, impute a crime upon which slander may be based.

4. INTENT OF SLANDEROUS WORDS, QUESTION FOR JURY.

Whether the defendant, in an action for slander, in using the alleged slanderous words, intended to charge a crime, is a question for the jury.

5. FACTS DETERMINING ALLOWANCE OF PUNITIVE DAMAGES FOR JURY.

Where slanderous words are spoken in a quarrel and in the heat of passion this fact should be considered by the jury in determining whether or not punitive damages should be allowed and in fixing their amount.

6. EFFECT OF SIGNATURE TO VERIFICATION OF PLEADING NOT BEING GENUINE.

The fact that the signature of the plaintiff, attached to the verification of his petition, is not genuine, in order to constitute a valid objection to the petition, must be raised before trial, and this is true although the plaintiff on cross-examination states that the signature is not genuine.

ERROR to the court of common pleas.

**Col. Joseph R. Bartlett** and **John B. Stahl,** for defendant in error.

**Kinney, O'Farrell & Rimelspach,** for plaintiff in error.

The taking of the whole of the property by one of the tenants in common is not larceny. 2 Bishop, New Cr. Law Secs. 792, 793; 2 Wharton, Cr. Law Sec. 1809; Alfele v. Wright, 17 Ohio St. 238, 239; Davis v. Brown, 27 Ohio St. 326, 328.

In cropping contracts, the title to the whole is in the tenant until division and delivery. Desty, Am. Cr. Law Sec. 145e; Sargent v. Courrier, 66 Ill. 245; Robinson v. Kruse, 29 Ark. 575.

Words to be actionable must impute criminality. 1 Starkey, Slander 21; Hollingsworth v. Shaw, 19 Ohio St. 430, 433; Reinhardt v. Faschnacht, 2 Circ. Dec. 571 (4 R. 321); Alfele v. Wright, 17 Ohio St. 238; Davis v. Brown, 27 Ohio St. 326; Hamm v. Wikline, 26 Ohio St. 81; Melvin v. Weiant, 36 Ohio St. 184.

Proof of special damages. Reinhardt v. Faschnacht, 2 Circ. Dec. 571 (4 R. 321); Reynolds v. Morris, 7 Ohio St. 310; Hollingsworth v. Shaw, 19 Ohio St. 430.

Injury to feelings as an element of special damages. Alfele v. Wright, 17 Ohio St. 238, 241, 242; Davis v. Brown, 27 Ohio St. 328; Wilson v. Robbins, Wright 40; Melvin v. Weiant, 36 Ohio St. 184.

Words imputing crime, relating to a transaction not criminal, and not intended to be understood as imputing crime, are not slanderous. Brown v. Myers, 40 Ohio St. 99; Reinhardt v. Faschnacht, 2 Circ. Dec. 571 (4 R. 321).

**HULL, J.**

In this case which was an action in slander, the defendant in error recovered a judgment against the plaintiff in error for $200, in the court of common pleas, and this action is brought to reverse that judgment.

The plaintiff, LeJune, complained that the defendant called him a thief, and, to read from his petition, "the slanderous words were, 'you (meaning plaintiff) damn thief, you stole six bushels of my apples (meaning then and thereby that this plaintiff was guilty of and did steal, take and carry away six bushels of apples),'" etc.

It is claimed that the verdict was against the weight of the evidence

Phillips v. LeJune.

and that the court erred on the trial of the case, in the exclusion and admission of evidence, in the charge and in the refusal to charge, and in some other respects.

It appears that the trouble between Dr. Phillips, the defendant below, and LeJune, grew out of some transactions that they had, as landlord and tenant. LeJune was living on the doctor's farm near Fremont, and working it "on shares." There was on the farm an orchard where the apples grew that this trouble grew out of.

Plaintiff claims that on the day in question the doctor came out to the farm and used the words set up in the petition; called him a thief and charged him with stealing six bushels of apples. The defendant denies using the language, or making any charge of theft, but claims that they had some differences there on that day, in regard to the apples; that he, Phillips, was picking up some apples on the ground; that LeJune upbraided him for it, asking him what he was doing there, and that he told him that he, LeJune, had taken six bushels of apples and given them to a man by the name of Fry, and that he was about to take three bushels for a Mr. Hall, who was with him helping pick up the apples, and Dr. Phillips claims that that was all there was of it; that he made no charge of theft, but that it was simply a disagreement which grew out of the division of these apples. He claimed that LeJune had taken either six or three bushels to pay Fry for helping pick apples, it being LeJune's duty to pick the apples, and the doctor denied using the language plaintiff charged him with.

A number of exceptions were taken on the trial of the case. It will not be necessary to refer to them all.

After the trouble in the orchard, Dr. Phillips went to the house and out into the road, and at the house, at the gate leading into the road, some more talk occurred between him and LeJune, the plaintiff claiming the doctor said to him: "Then you did steal these apples. You know you did," and that this was said in the presence of his wife.

At the conclusion of the testimony the defendant below asked the court to require the plaintiff to elect which statement of the defendant he would proceed upon. The court overruled this motion, but did say in the presence of the jury that there was only one thing complained of, and that was the language set up in the petition, and that that was the only language that could be recovered upon, and said at another time to the jury, in the charge, that the language used at the gate, if any was used, could only be considered for the purpose of showing malice. We think there was no error in the court refusing to require the election to be made.

The plaintiff below was permitted to testify to the effect this language

had upon his feelings; that it wounded his feelings and that he was unable to sleep, and other effects he claimed the alleged slanderous language had upon him. This was objected to and exceptions taken. In a slander case injury to feelings may be considered by the jury—such injury as they would reasonably conclude a man suffered; such effect may be presumed —but plaintiff may go farther and testify and offer evidence, if he sees fit, as to the actual effect the language had upon him, and there was no error in the action of the court in admitting that testimony, nor was there any error in the court refusing to dismiss the case, when, upon cross-examination, the plaintiff looked at the signature attached to the verification of the petition and gave as his opinion that it was not his handwriting; that he did not sign it. He may have been confused at the time. At all events it was his case; he authorized the suit to be brought; no objection was made at the time the petition was filed and answer was filed, and we think no objection could be made upon the trial upon that ground.

A number of requests to charge the jury were asked by the defendant below, among them request No. 3, which was refused by the court, and it is claimed that this was error. This instruction or request for instruction was as follows:

"3. Gentlemen, I say to you as a matter of law, that an action of slander cannot be maintained for words which impute a crime, where, from all that was said at the time the words were spoken, it appears that the words had relation to a transaction that was not criminal, and that they must have been so understood by the hearers."

This request by the defendant below was in line with his defense, that whatever he said on that occasion was not said with any intent to charge LeJune with having committed a crime, but that what defendant said was said under such circumstances that those who were present must have understood that it was not intended to charge LeJune with a crime.

As I have stated, the trouble arose in the orchard over these apples which LeJune had raised on the farm that he had leased from Dr. Phillips, upon "the shares." It would not be a crime, of course, for LeJune to take undivided crops. While it would constitute a civil cause of action, it would not be larceny as long as they owned the property in common, he being a tenant upon the farm, and this charge that LeJune stole property from him might be understood as merely the taking of more than his share of the apples that had been divided up to that time, and not a charge of crime. And Dr. Phillips' testimony and the witnesses that he called tended to support this claim.

There were present at the time of the transaction, besides the plaintiff and the defendant and a Mr. Hall, who had gone out to the farm with Dr.

Phillips, a witness by the name of Stiffler, and a young son of LeJune, a boy about nine or ten years old, at the time this occurred. LeJune's wife was at the house, and did not hear what occurred in the orchard. Dr. Phillips testified that he was picking up apples under the trees when LeJune came and asked him what he was doing, and that he, Dr. Phillips, said:

"You gave Fry six bushels of my apples" or "took six bushels of my apples for Fry, I am taking three for Mr. Hall."

And Dr. Phillips testifies there had been some trouble before between them about some wheat; that LeJune had threatened to whip him, and that he, perhaps, had made some threats toward LeJune, and told him if he attacked him as he had on a prior occasion he might shoot him—might put a bullet through him.

It was apparent there was quite a quarrel—quite a violent quarrel—between these two men on this occasion. The witness, Stiffler, who was called by LeJune, testifies upon examination in chief, when he was examined as a witness for plaintiff, that he did not hear the language complained of by plaintiff. He said he heard them quarreling about their crops, but what was said he was unable to state, and finally counsel stated that plaintiff was taken by surprise by the witness, and he was permitted to cross-examine the witness and put the question to him directly and in leading form whether he heard this language, and he then said that he did, but not till then.

So the issue was fairly raised here—squarely raised—as to what language was used upon this occasion; the doctor denying that he used the language with which he was charged; admitting that he did say something in regard to the apples, and saying that he had no intention of charging plaintiff with theft. The doctor testified that immediately after he said whatever he did to LeJune, LeJune called upon those who were present and asked them if they heard the doctor charge him with stealing, and some of them said they did and some that they did not, and the doctor then said:

"I did not charge you with stealing; I had no intention of charging you with stealing; what I said was that you took these apples."

So the issue was presented to the jury whether Dr. Phillips used the language complained of and whether the language used was language which showed an intention to charge LeJune with a crime, or whether it was used under such circumstances that those present would or would not understand that he was being charged with a crime. If the language was used under such circumstances and in such a way that those who were present would have known that it was not intended to charge LeJune with

a crime, it is not slander, for the injury and damage done by slanderous language is in charging a man in such a way that those who hear the words understand that he is being charged with a crime, or with some offense involving moral turpitude. If those who hear the language have no such understanding as that, and if the words are spoken under such circumstances that a man would naturally have no such understanding, no damage is done.

The Supreme Court say in Alfele v. Wright, 17 Ohio St. 238:

"Upon the question whether slanderous words are actionable in themselves, as charging the plaintiff with crime, the general rule of the common law is, that where the charge, if true, would subject the plaintiff to an indictment for a crime involving moral turpitude, or to an infamous punishment, the words are actionable *per se;* and otherwise not.

"One of two partners cannot be guilty of burglary or larceny in respect to a house or goods of which the ownership and possession are in both partners. An entry of such house, and carrying away of such goods by one of the partners, would not subject him to a criminal prosecution, either at common law or by statute. Therefore, words charging a partner with such conduct are not actionable, without special damage."

No special damage was either alleged or claimed in this case. It is set up in the petition that plaintiff was a farmer, and that to be charged with being a dishonest man injured him, and that it was necessary that he should be of good repute to carry on his business, etc.; but it was not alleged in the petition that he had lost the lease of any farm, or lost any property, or any advantage on account of these words, and no special damage was proven or undertaken to be proven on the trial of the case, so that he would not be entitled to recover in this case on the ground of special damages, and, if at all, it must be on the ground that he was charged with a crime. Such a charge is actionable *per se.*

Under the testimony as it stands we think that there is a good deal of a question whether the doctor intended to charge plaintiff with a crime. It was certainly a question that should have been properly and fairly submitted to the jury. They were having a quarrel which grew out of the division of this crop of apples—a quarrel between landlord and tenant; there was trouble about the apples LeJune was raising "on shares." It is admitted all around that there was some talk about that. And whatever defendant said was said under such circumstances as made it a very proper question to leave to the jury, whether there was any intention on the part of Dr. Phillips to charge LeJune with a crime, even if he did use the words which LeJune claims he did.

Phillips v. LeJune.

There was no sufficient instruction to the jury in the general charge along this line—upon this feature of the case—and it was an important question in the case.

Dr. Phillips having testified that he did say to LeJune, "You took six bushels of apples for Fry, and I am going to take three for Hall," the jury might, possibly, without any instruction on that question, have thought that the statement of defendant was practically an admission that he charged LeJune with stealing, while, according to the doctor's testimony, and the testimony of Hall, who was present, whatever the language was, these words were used in such a manner and under such circumstances as to show that he had no intention of charging LeJune with anything more than taking five or six bushels of these undivided apples—a portion of them—and thus entitling him, Phillips, to a like amount, and that he had no intention of charging him with theft.

We are of the opinion that the instruction No. 3 asked by the defendant below should have been given. It is plain to us that it was pertinent to the case, and is the law as laid down by the Supreme Court of this state.

In the case of Brown v. Myers, 40 Ohio St. 99, the Supreme Court say in the syllabus:

"An action of slander cannot be maintained for words which impute a crime, where, from all that was said at the time the words were spoken, it appears that the words had relation to a transaction that was not criminal, and that they must have been so understood by the hearers.

"In such case it is error to exclude evidence offered by the defendant to show what the transaction was to which the words related."

That being the law, the only question is whether the request was pertinent to the facts of this case, and we think that it was very pertinent, and that the jury should have been charged fully upon that question.

Whatever was said on this occasion was said in a quarrel—in the heat of passion: there was no deliberate and premeditated charge of theft. Whatever was said grew out of the differences between these two men, in regard to this crop of apples. The circumstances under which the words were uttered; the place where they were uttered, and the fact that LeJune had, in fact, given six bushels of apples, or set apart six bushels of apples, for Fry, before this trouble occurred; the testimony of Mr. Hall, all go to corroborate Dr. Phillips' claim as to this transaction.

According to the testimony, some of it, at least, LeJune had made an arrangement with Fry to give him six bushels out of eighteen, for picking them, and the apples were all there on the ground in sight of the parties: twelve bushels in one pile and six in another, which were to go to Fry.

8  Vol. 25 O. C. C.

However, as the plaintiff testifies to the use of this language; denies the claims of Dr. Phillips, and is corroborated, to some extent, by his son, but who was quite young, in fact, so young that he testified on the witness stand that he did not understand the nature of an oath; in view of this testimony, we do not hold, as a matter of law, that the judgment should be reversed and verdict set aside because against the weight of the evidence, but it was a question for the jury, under proper instruction from the court.

We think it was reversible error in the court to refuse to give this instruction to the jury, and that the charge was faulty and defective in not mentioning to the jury the facts and circumstances as claimed here by the defendant, as surrounding the speaking of the words, whatever they were, and stating to the jury the law upon that question as laid down by the Supreme Court. That was a very important factor in this case, and we think the jury should have been fully instructed upon it.

We think that this is a case where the jury might well have been instructed more fully on the question of punitive damages. They were simply instructed that they might return punitive damages. It is true that this, to some extent, lies in the discretion of the jury, if the evidence warrants it. It may or may not warrant such damages in addition to compensatory. But there was evidence strongly tending to show that the words were uttered in passion, without any intention of injuring LeJune; and the jury should have been instructed that this should be taken into consideration by them on this question of punitive damages in determining whether or not any should be allowed, and generally in fixing the amount of the damages if they found for plaintiff.

We find this in Seaton v. Cordray, Wright 101:

"An action may be sustained for charging another with being a thief or with having stolen, but not for imputing a mere intention to steal, or with having an evil disposition.

"To make words imputing crime actionable, they must be such, as, if true, would subject the accused to infamous punishment.

"Slanderous words, uttered in heat and passion, or provoked by the plaintiff, entitle the plaintiff to merely nominal damages."

And the court said:

"An action may be sustained for charging another with being a thief, or with having stolen, but not for imputing a mere intention to steal, or with having an evil disposition. * * *

"If the words spoken do impute crime, but were spoken in heat and passion, while the parties were excited, and in contest, the damages should be merely nominal for the plaintiff."

If whatever was said in the case at bar was said in a quarrel between these two men and in passion, if the jury found for the plaintiff, that should have been taken into consideration by them in fixing the amount of punitive damages and in determining whether *any* such damages should be allowed, and upon the question of damages generally this should be considered, and the jury should have been instructed fully upon that point by the court.

We think from the whole record in this case, that the ends of justice have not been reached by this verdict and judgment, and for the errors pointed out the judgment will be reversed, the verdict set aside and the case remanded for a new trial.