## THE DEFENSE OF PRIVILEGE TO A CHARGE OF LIBEL.

[Circuit Court of Columbiana County.]

Todd v. East Liverpool Publishing Co.

Decided, March 31, 1906.

*Libel and Slander—Competency of Evidence as to Facts Admitted in Pleadings—Exceptions to Charge of Court—Proper Charge as to Innuendo—Libels Per Se—Defense of Privilege as to Matter Admitted to be False.*

1. In an action for libel, where the falsity of the publication has been admitted in the answer, the introduction by the plaintiff of evidence having reference to such falsity, brings it within the discretion of the court to permit the defendant to also introduce evidence on the same subject, provided the question of the truth or falsity of the charge is not submitted to the jury.

2. The fact that no exception was taken to the charge of the court, does not prevent the raising of the question on review as to whether the verdict was contrary to law, where it was apparently the result of erroneous instructions.

3. A newspaper publication which charges a policeman with having taken money from a prisoner for which he had refused to account, charges a crime involving moral turpitude, and is libelous *per se;* and it does not lose its libelous character by reason of the fact that it was a mere repetition of what others had said.

4. It is for the jury to determine whether the meaning ascribed to the publication by the innuendo was intended by the defendant, but the question is submitted only as bearing on the matter of actual malice and in mitigation of punitive damages, and not as a defense that would prevent recovery.

5. A libelous charge against a public officer can not be defended by the newspaper printing it on the ground that it was of public interest and as such was privileged, but to make the defense of privilege available it must be shown that reasonable diligence was used to ascertain the truth of the charge and that it was published in good faith.

Laubie, J. (orally); Cook, J., and Burrows, J., concur.

Error to Columbiana Common Pleas Court.

This is a proceeding in error by Todd to reverse a judgment of the court below in favor of the defendant, in an action brought by himself against the publishing company for libel. The arti-

cle was written by a reporter of the defendant, and published in its newspaper, the *Evening Review*, at East Liverpool, this county, and is as follows:

"Jenkins wants his money back. Say officers took $50 from him and that he was sober. Has hired an attorney.

"Officer Temple Sykes Todd has got to convince Bert Jenkins that he knows nothing of the two $20 gold certificates, which Jenkins alleges the patrolman took from him on last Thursday evening and refused to turn over, to the mayor. A prominent attorney has been engaged by Jenkins and the case will be pushed.

"Jenkins was arrested on a charge of being drunk and disorderly. He was taken to the city hall by Officer Todd and he says that Todd and Night Janitor Turnbull searched him. He claims that Turnbull took a $10 gold piece and some small change from his right pocket and that Todd got the certificates from his left pocket. He says that he asked the officers to count the money in his presence but they refused and Todd told him to get on in his cell, that the money would be attended to. It is said that several members of the board of public safety were present at the time. Jenkins expects to prove by several witnesses that he had the money within thirty minutes prior to the arrest and that he had no way to get rid of it. He also claims that he was not drunk. When the mayor offered to give him about $7 on the morning following the arrest he refused to take it saying that he had two $20 bills coming to him and that he wanted it all.

"The story of his protest was published in a morning paper, but the name of the officer who was accused of taking the money was not published and suspicion therefore rests on the entire force."

Plaintiff alleged that the defendant thereby falsely and maliciously intended to and did charge him with having kept, stolen or embezzled $40, the money of the said Jackson, while acting as such policeman. The defendant in its answer admitted the publication but denied the intent charged, and alleged it published the article as a matter of public interest and in good faith.

It is alleged as one ground of error that the court erred in admitting evidence upon the part of the defendant to show the

truth of the act charged.  Of course, under the pleadings it was admitted that the charge was unfounded; that it was false, as the truth of the charge was not alleged as a defense; consequently the plaintiff had no reason nor necessity to undertake to prove the falsity of the charge as a fact, but did do it.  In the examination of Todd himself when upon the stand, his counsel proceeded to ask him and to have him tell that the man Jenkins did not have in his possession two $20 bills, and that he did not take such bills or money from Jenkins.  So that the plaintiff opened the door himself.  And in such a case where the plaintiff starts the evidence—as it is said, opens the door— then in such case it is in the discretion of the court afterwards to permit the defendant to give evidence upon the same proposition.  The court permitted Jenkins himself to testify that he did have the two $20 bills, and that they were taken from him by Todd the night of his arrest.  So we can not say there was any error in admitting that evidence, as the plaintiff himself opened the door by attempting to show that which he had no occasion to do, because the falsity of the charge was admitted. If the court had permitted that question to go to the jury in that shape—that is, submitted to them whether the charge as a defense was true or false—then of course that would have been error. · But the court did not do that, and we can not say there was any error in the respect named.

The principal ground of complaint, however, is in regard to the charge of the court.  And in two particulars: One, as to whether this was a libel *per se;* and, secondly, whether it was a privileged publication.

There was no exception taken to the charge of the court.  The plaintiff below seemed perfectly content and satisfied with the charge of the court to the jury, so far as the record discloses; probably on the ground that there was no question but that he would recover.  But it is the principal error here claimed, and relied upon, and of course if the law permits it, we have to consider it.  And the law does permit it, under certain circumstances, and the case at bar is of that class.  Where there is a complete record of the whole proceedings—evidence and all, as

here—and the verdict is contrary to law, and apparently was the result of erroneous instructions, no exception need be taken.

In *Mowry* v. *Kirk*, 19 Ohio St., 375, the last head of the syllabus is:

"When the whole case, evidence and all, is before the court, and the error of law occurring at the trial is such as to make the verdict contrary to law, a new trial should be granted, though no exception was taken to the ruling of the court."

And in *Baker* v. *Pendergast*, 32 Ohio St., 494, it was held, third head of syllabus:

"Where the overruling of a motion for a new trial is assigned for error, and all the evidence offered on the trial, together with the charge of the court, is properly brought up by bill of exceptions, a reviewing court will, in connection with the evidence, look to the charge of the court, whether excepted to or not; and if there is reason to believe that the verdict was the result of erroneous instructions, will reverse the judgment and award a new trial."

In this case all of the evidence and charge of the court are in the bill of exceptions, and the question whether the verdict was the result of erroneous instructions must be considered. And it certainly was, as there can be no question but that the plaintiff was at least entitled to recover full compensation for all injuries caused by the publication.

The court in this instance, after stating that the defendant did not deny the publication of the article, said to the jury:

"If the article, upon its face, charged this plaintiff with being a thief, with having stolen the money of the man Jenkins, then I would be warranted in saying to you, as a matter of law, that such a charge was in and of itself libelous; but they do not directly charge him thus in the article in question, and the defendant, by its answer, says that it had no intention of so charging this plaintiff. That it did not falsely and maliciously publish nor intend to publish that this plaintiff stole, embezzled or took the money of another. The plaintiff, on the other hand, says that that is the just and fair inference to be drawn from the language used. Whether or no such fair inference is to be

drawn from that article is a matter addressed to the good common sense of you twelve men, and upon your retirement the first thing that you ought to do is to take that article up and read it in its entirety, and consider it in detail to the end that you may answer that question whether or no the article as published was such that, by a fair inference, men reading it would conclude and infer therefrom that the newspaper intended to charge this plaintiff with the taking improperly with the intent to appropriate that money. For if that is not the fair inference to be drawn from that article, then there is no libel, and your labors would be at an end, and you should return a verdict for the defendant.''

So that the court submitted the whole question to the jury to determine whether this was a libelous article, and whether also there was any fair inference that did charge the plaintiff with being a thief, with having stolen or taken the money.

In this, we think the court erred. The article itself is libelous on its face. It starts out with, ''Jenkins wants his money back. Officer Temple Sykes Todd has got to convince Bert Jenkins that he knows nothing of the two $20 gold certificates which Jenkins alleges the patrolman took from him on last Thursday evening and refused to turn over to the mayor. A prominent attorney has been engaged by Jenkins and the case will be pushed.''

And after reciting what Jenkins said, and what he claimed, as heretofore quoted, the article ends this way:

''The story of his protest was published in a morning paper, but the name of the officer who was accused of taking the money was not published and suspicion therefore rested on the entire force.''

And the reporter himself, when upon the stand, admitted that he was accusing Todd of stealing the money when he said, ''I named the officer (Todd) who was accused of stealing the money.''

A libelous article does not cease to be a libel because the party charged was simply repeating what some other body told him, or that he heard some other one say. If, in fact, it is libelous—

if it accuses another of theft, or illegally taking property—taking money from the person of another secreting and keeping it—the question is, whether the statement itself is libelous, and if it is, the party libeled is entitled to compensation, whether the defendant originated the libelous matter, or merely repeated what he had heard some one say. *Haines* v. *Welling*, 7 Ohio (pt. 1), 253; *Fowler* v. *Chichester*, 26 Ohio St., 9.

The innuendo allegation in the petition is, that the plaintiff wrongfully took, stole, or embezzled $40, the property of Bert Jenkins. It does not undertake to set out that plaintiff was thereby held up to public disgrace, but it is alleged that he was thereby injured in his reputation, which is practically the same thing. We think there is no question but what the innuendo alleged is a true one as evidenced by the article itself.

It alleges plaintiff was a policeman. That he arrested Jenkins for being drunk and disorderly, and that he and Turnbull, another officer of a similar character, searched Jenkins and took his money, the plaintiff taking $40 which he did not deposit with the mayor, but kept it himself. That Todd was the officer who was accused of taking the $40, and has got to convince Jenkins that he knows nothing of those two $20 gold certificates. That Jenkins has employed an attorney, and the case will be pushed. So that the defendant itself asserted that the burden was on the plaintiff, of proving, in order to exonerate himself, that he knew nothing about these certificates. This statement was not hearsay, but the defendants' own charge, in effect that plaintiff took from Jenkins $40, secreted it and kept it for his own purpose, which, if true, would subject him to indictment for a crime involving moral turpitude and infamous punishment. It plainly was a charge of larceny or embezzlement, or both.

In *Cheadle* v. *Buell*, 6 Ohio, 67, it was held:

"Words charging a person with having received a letter containing money, to deliver to another, that he gave himself a false name at the time, and that, instead of delivering the letter, he broke it open and used the money, amount to a charge of larceny and are actionable in slander.

"Larceny is a taking and conversion of another's property

in a secret and clandestine manner, and with the intention, by secrecy and fraud, to deprive the owner of his remedy to recover his goods.''

In 18 Eng. L. & Eq. (2d Ed.), 473, in discussing the question, what is a larceny, it is said:

''It is accordingly as obvious as it is well settled that the conversion of goods by one who has the mere custody of them is a trespass, and therefore a larceny.''

Even in cases of bailment, a conversion after the termination of the bailment is larceny. *Ib.*, 479.

This plaintiff, the article in effect states, as a policeman, had the custody of this money. It would not be criminal for him to search this intoxicated party when he arrested him, and to do as he did—put the money found on his person in an envelope and give it to the mayor to be held until the man's case was disposed of by the mayor. It was not an illegal act. He properly had the mere custody of the money. But if he refused to count the money and tell how much he took, and secretly kept it for his own use instead of putting it with the other, and turning it over to the mayor, it was a clear case of larceny, and that is the statement made in this publication.

But if it was not, it was at least a charge of embezzlement. If the statements of the article were true, he had committed the crime of embezzlement.

Section 6842, Revised Statutes, provides that:

''An officer * * * who embezzles, * * * or secretes with intent to embezzle or convert to his own use, anything of value which shall come into his possession by virtue of his appointment or employment as such officer, * * * is guilty of embezzlement.''

The plaintiff was an officer, recognized as such in various statutes of the state, and if he obtained the $40 in the manner stated, the money came into his possession by virtue of his office, and he secreted it with intent to convert it to his own use.

The court should have instructed the jury that the article was libelous *per se*. There are no two inferences to be drawn from it.

It charges, in effect, as alleged in the petition, that he stole the $40. Larceny or embezzlement is stealing, and the party who does it is a thief in the eyes of the law.

"Where the charge, if true, would subject the plaintiff to an indictment for a crime involving moral turpitude, or to an infamous punishment, the words are actionable *per se*." *Alfele* v. *Wright,* 17 Ohio St., 238.

Indeed, any false newspaper article, the tendency of which is to degrade, and lessen the standing and reputation of the plaintiff in the community, is libelous *per se*. *Tappan* v. *Wilson,* 7 Ohio (pt. 1), 190, 193.

And in *Post Publishing Co.* v. *Moloney,* 50 Ohio St., 78, the first paragraph of the syllabus is:

"To print and publish of a person, that he 'is said to have been in the workhouse, and to have had a criminal record,' is libelous *per se*."

The plaintiff, Moloney, was a policeman, as the plaintiff in this case, and the article in each case would injure the reputation and official integrity, and degrade the officer in the community.

*Mauk* v. *Brundage,* 68 Ohio St., 89, is about the latest case we have from the Supreme Court. This was a case where the board of health of the village published a matter in regard to the village physician. And the court, in the second head of the syllabus, hold:

"In an action for libel the question whether the publication is not libelous *per se* is a question for the court. And where the publication is claimed to be privileged, the question whether or not the occasion gives the privilege, the controlling facts being conceded, is also for the court."

In *Kahn* v. *Cincinnati Times-Star,* 8 N. P., 616, affirmed without report, *Cincinnati Times-Star Co.* v. *Kahn,* 52 O. S., 662, this is a portion of the holding:

"1. Any written words are defamatory which impute to another that he has been guilty of any crime, fraud, dishonesty, immorality, vice, or dishonorable conduct, or has been accused

or suspected of any such misconduct, or which suggest that the person is suffering from an infectious disorder, or which have a tendency to injure him in his office, profession, calling or trade.

"2.    Everything printed or written which reflects on the character of another and is published without lawful justification or excuse, is a libel, whatever the intention may have been.

"3.    Unless the article published was entirely true, the law implies malice and liability will attach and the plaintiff can recover damages."

So that as the defendant's defense admitted that the statements were not true, the question whether the article was a libel *per se* was for the court; and the court should have instructed the jury that it was a libel *per se*, and that the plaintiff was entitled to recover full compensation for such defamation. Instead of doing that, as we have seen, the court left it to the jury to determine whether or not it was a malicious libel.

The court told the jury, "Whenever you go to your room the first thing you do, take up this article and read it in its entirety, and consider it in detail," to the end that they might "determine whether or not, by a fair inference, it charges him with the taking improperly with the intent to appropriate that money." It was a question of law, and not of fact, yet the jury were to take it and construe it as if it was a superior judicial tribunal to the one that was giving the instruction.

The court also left it to the jury to determine the inference to be drawn from the article. And upon this proposition counsel for the defendant rely upon, and refer us to, the case of *State* v. *Smily*, 37 Ohio St., 30, which was a criminal action for libel. The concluding statement of the eminent judge that delivered the opinion shows that the case does not sustain the contention of counsel of this defendant. It is as follows, page 35:

"Mr. Starkie states it to be the duty of the court to determine whether the language will bear the meaning ascribed to it by the innuendo, and if it will, that the question whether such meaning was intended, must be submitted to the jury. * * * This we believe to be the true rule, and applying it to the present case, we think the point admits of little doubt, that the language

employed by the defendant will bear the meaning which the innuendo ascribed to it, and that in holding otherwise the court erred.''

It is the court's duty, therefore, as laid down in that case, to determine the inference—whether the language would bear the meaning ascribed to it in the innuendo.    Instead of doing that the court, in the case at bar, left it to the jury to determine whether or not the language would bear the meaning ascribed to it in the innuendo, although the language was too plain for doubt.

The further proposition is entirely distinct from that.    That is, if the language of the article will, in the opinion of the court, bear the inference alleged in the innuendo, then the court may submit to the jury whether such meaning was intended by the defendant.    That, however, is only on the question of damages, as a matter of excuse in mitigation of punitive damages, and not as a defense that would prevent a recovery.    After the court has determined that it is a libel *per se*, that from its language the inference must be as charged in the innuendo, if the question may go to the jury, whether the defendant intended such inference, it could only be as bearing on the question of actual malice.    But the court left every question in the case— malice included—to the jury as questions of fact.    So that in all of these respects we think the court erred.

''Malice may be evinced in circulating slanderous reports as well as originating them; and if the words repeated are actionable in themselves, the malicious intent in publishing them will be inferred, unless it be shown that the circumstances under which the words were uttered and published were such as to repel the inference.''    *Fowler* v. *Chichester, supra*, page 14.

''In the absence of a justifiable occasion for the publication, malice is but an inference of law, and should not be left as a question of fact for the jury.''    *Mauk* v. *Brundage, supra*, page 98.

As to privilege in regard to a libel there are two classes, at least.    One is an absolute privilege that is possessed by the party who publishes the libel, and the other is a qualified one

arising from the circumstances of the case, as it is said in regard to the newspaper press, that it may print in regard to certain things, and as to certain parties, that which will be conducive to the public welfare or morality of the community.

The court in this case charged this:

"A newspaper—under the Constitution of the state of Ohio, embodied in its Bill of Rights—like an individual, has a right to write, speak and publish just criticsm, even though it be severe, concerning public officers or private individuals. The Constitution in that respect reads thus: That 'every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of the right. No law shall be passed to restrict or abridge the liberty of speech or of the press.' And one of our courts in speaking in respect to that constitutional provision has aptly, I think, used this language:

"'The right to exercise reasonable criticism should be extended liberally to the newspaper press. Just criticism, though severe, may be a great conservator of the character and morals of the people. To truthfully and fairly hold up to public view and condemnation conduct that is wrongful and detrimental to social well-being is a very useful and important office of the newspaper press.'

"You are therefore instructed that whenever the object of any newspaper publication, fairly considered, is not to injure the reputation, but to correct and hold up to public condemnation that which is hostile to morality and official integrity, does not come within the definition of libelous matter so long as the author or authors keep themselves reasonably and in good faith within the line of truth and wholesome criticism."

Thus the court correctly quoted to the jury the provisions of the Constitution and the declaration of the Supreme Court upon this question, which the court affirmed in the emphatic language quoted; but it was a mistake to apply such doctrine to the case in hand. This was not a case where the defendant was "holding up to public view and condemnation conduct of the plaintiff that was wrongful and detrimental" or "hostile to morality and official integrity." If Todd had been convicted of larceny, or it was shown as a fact that he had stolen the money, then his conduct might have been held up and commented upon in the

public press.    But that was not this case.    It was not a case where he had, in fact, taken the money.    It was admitted that he had not.    It was admitted that the charge was false, and admitted in such a shape that the defendant could not possibly controvert it.

Where an act is really done by an officer—actually performed—there the public press may comment upon it and bring it up before the public for public condemnation, if it is wrongful.    But it must be such a case to justify such criticism.    This was a different case entirely, and the law thus given to guide the action of the jury had no application to it, nor should this question have been submitted to the jury at all.    The controlling facts being conceded, as in the case of *Mauk* v. *Brundage, supra,* the question whether occasion gave the privilege was for the court.    It was not a privileged communication, because the defendant did not attempt to assert its truth, but admitted plaintiff had not committed the act.    Then why should they attempt to hold him up, or be justified in holding him up, to public condemnation, for doing that act—an act which he did not do, and which they admit he did not do?

And again: As to a qualified privilege growing out of the circumstances which might relieve the defendant from punitive damages.    The cases that I have referred to bear upon this question.    And they show that when, as in a case like this, the newspaper company that undertakes to set up that the article referred to was a matter of public interest, and that it was justified in commenting upon it, must show, in order to rebut actual malice and prevent punitive damages, not only that it acted in good faith, but that it had used reasonable diligence to ascertain the truth.    But the court in the charge eliminated all question as to reasonable diligence upon part of the defendant, and instructed the jury that good faith alone was sufficient to uphold such claim.    This man Jenkins was arrested for being drunk and disorderly, and he pleaded guilty and was fined, and the defendant knew it, and yet it declares in this article, "Jenkins says he was not drunk."    So the defendant ought to have known that he was lying, and yet it took no steps to ascertain

the truth of this charge against the plaintiff.   Take the statement of the reporter himself when on the stand.

Question.   "What steps did you take to ascertain what there was in the story?"

Answer.   "After hearing the story that Mr. Jenkins had accused Mr. Todd of stealing $40 from him, and that he had not been able to get the money back at the city hall, and had employed an attorney to get the money back for him, I then called up the attorney to corroborate the story.   And the attorney told me that he had taken the case and would see what there was to it."

Then he states that there had been a publication of the matter in the other city paper, the "*Tribune*," and he is asked:

Question.   "In what particular did yours differ from the *Tribune* story?"

Answer.   "Well, about the only particular I think was the fact that I named the officer who was accused of stealing the money, and that the case had been given to an attorney."

And that is all the means he took to ascertain the truth.   He had called up Jenkins' attorney and asked him, and the attorney said he had taken the case and he would see into it—giving him no assurance of the truth of Jenkins' statement.   In the article itself the reporter states that when Jenkins was searched and the money taken, several persons were present, as follows:

"It is said that several members of the board of public safety were present at the time, and Officer Turnbull was there and helped to search."   And yet he made no effort at all to reach either of those parties—parties that were said to be present. Several members of the board of public safety, and another officer present at the time the money was taken, and who, the evidence showed, saw the money laid out upon the table and put into an envelope, and it was twelve dollars and some cents.   The evidence, therefore, shows clearly and conclusively that he did not use reasonable diligence in ascertaining, before publishing this article, the truth of Jenkins' statement; and therefore the publication was in no sense shown to have been privileged."

In *Post Publishing Co.* v. *Moloney, supra,* pages 84, 87, it is said:

"Publications having a qualified privilege are more numerous, and are those where the privilege arises out of the circumstances of the publication. Good faith in the publication and the exercise of reasonable diligence to ascertain the truth of its statements are essential to the privilege, which is said to be qualified because the plaintiff may recover, if actual malice be shown, notwithstanding the existence of the circumstances which would otherwise make the publication a privileged one.

"It was proven on the trial, that the plaintiff was a policeman of Cincinnati at the time of the publication, and had been for a long time prior thereto; that he had never been in the workhouse, nor charged with any crime, or misconduct; and that his general reputation was good. The evidence also tended to prove that the truth could have been easily ascertained by the employe of the defendant who wrote the article, upon proper inquiry, and that he had information of the facts before the article was published."

And that doctrine applies here. This reporter could easily have ascertained the truth by inquiring of these members of the board of public safety, and of Turnbull, who were present when the man was searched, and the money taken out and laid upon the table. And that important element in this case the court eliminated entirely in its charge to the jury.

For the reasons stated, and because the verdict is clearly against the weight of the evidence, the judgment is reversed and cause remanded.

*W. H. Spence,* for plaintiff in error.

*J. H. Brookes* and *R. G. Thompson,* for defendant in error.